### The Western Mortgage and Investment Company, Limited, v. J. A. Shelton.

#### No. 1442.

1. **Sequestration—Measure of Damages for Wrongful Levy.**—The correct measure of damages for the wrongful levy of a writ of sequestration, where the plaintiff in the writ gives replevy bond for the property, is the value of the property at the time of trial, with such special damages as may be alleged and proven; and not the value at the time of the levy, with interest from that date.

2. **Chattel Mortgage—Sale of the Property—Conversion.**—Under the chattel mortgage act of 1879, and under a chattel mortgage providing in terms that if the mortgagor shall sell the property without the consent of the mortgagee, the latter may at once take possession thereof, wherever found, and sell it in any manner, a chattel mortgagor sold the mortgaged property to S., the defendant, who had notice of the mortgage, and S. resold it to other parties, the purchase not being made in recognition of the mortgagee's superior right, nor the resale made subject thereto. *Held*, that such purchase and resale afforded prima facie evidence of a conversion by S., such as would render him liable to the mortgagee for the value of the property.

APPEAL from Shackelford.  Tried below before Hon. T. H. Conner.

*Alexander & Clark* and *A. A. Clarke*, for appellant.—1.  The correct measure of damage, where property has been wrongfully sequestrated, is the value of the property at the time of the trial.  Watts v. Overstreet, 78 Texas, 571.

2.  It is lawful to make a contract with the mortgagor, though the property remains in his possession, that he shall not sell the same without the written consent of the mortgagee, and a party who, with knowledge of such contract, buys the property mortgaged without the written consent of the mortgagee, wrongfully purchases and takes possession of the property, and can be held liable for a conversion thereof. Bryant v. Pollard, 92 Mass., 81; Grosselli v. Lowden, 110 U. S., 349; Bowen v. Autrey, 22 Cal., 566; Jackson v. Shutz, 18 Johns. (N. Y.), 174; 2 Pars. on Con., 7 ed., 887.

*J. H. Calhoun, Theodore Mack,* and *L. W. Campbell*, for appellee.
1.  In suits for damages by reconvention by defendants in attachments, sequestration, and other suits of similar character, against plaintiffs and sureties upon their bonds, for wrongfully suing out the writ and seizing the property of defendant under said writ, the correct measure of damage is the value of the property seized at the date of the seizure, with legal interest thereon to the date of the trial.  Rev. Stats., art. 4492; Harris v. Finberg, 46 Texas, 79; Fowler vs. Stonum, 6 Texas,

61; Clark v. Pearce, 80 Texas, 146; Bank v. Houts, 85 Texas, 69; 4 Am. and Eng. Encyc. of Law, 125.

2. A mortgage in Texas is but a security or charge against the property, and our courts place the equitable construction upon a mortgage, and hold that the legal title, ownership, and right of possession remains with the mortgagor; and it is provided by statute in Texas, that property either mortgaged, pledged, or assigned, may be sold subject to the rights of the mortgagee; and it is the law of this State that the purchaser of mortgaged property does not become a trespasser, and is not responsible to the mortgagee for a conversion of said property, unless he does some act to either destroy, lessen, or impair the security of the mortgage. Sayles' Civ. Stats., arts. 2296, 3190b; Raysor v. Reed, 55 Texas, 266; Silliman v. Gammage, 55 Texas, 365; Frankel v. Byers, 71 Texas, 308; Wright v. Henderson, 12 Texas, 43.

HEAD, ASSOCIATE JUSTICE.—Appellant instituted this suit to recover of appellee the title and possession of sixty head of horses, and had issued a writ of sequestration, which was levied upon a part thereof.

Upon the trial of the case in the court below, the jury returned the following verdict:

"ALBANY, TEXAS, November 14, 1891.

"We the jury find for the defendant, John A. Shelton, actual damages in the sum of $1374, together with interest thereon at 8 per cent from date of sequestration, August 6, 1890, for horses appropriated by plaintiff.  [Signed]  "L. T. PRICE, Foreman."

The only appropriation claimed to have been made by the plaintiff was the levy of the writ of sequestration and taking possession, after giving a replevin bond, as provided by statute.

It seems to be conceded in the briefs of the parties, that the amount found by the jury was the value of the horses at the date of the levy of the writ of sequestration, with interest from that date to the time of trial, instead of their value at said last named date. We are of opinion that the correct measure in cases of this kind is the value of the property at the time of the trial, supplemented by such special damages as may be alleged and proven.

We do not understand that the simple levy of a writ of sequestration, and the giving of a replevin bond by the plaintiff, under our statute, is a conversion of the property, but rather that it is a judicial deposit for the purpose of keeping it safely pending the trial, the real contest continuing to be over the title to the property itself. Fowler v. Stonum, 6 Texas, 72.

Ordinarily, interest should not be allowed, but in its stead a recovery can be had for "the value of the fruits, hire, or revenue" of the property pending the suit, this being the condition of the replevin bond. Rev. Stats., art. 4505.

. If there be special damages, such as depreciation in the value of the property between the time of the levy of the writ and the date of the trial, this also can be recovered by proper pleading in reconvention; but to authorize the allowance of such damages, special pleading is required.     Harris v. Finberg, 46 Texas, 85. In this case, no such pleading is found on the part of appellee.

It has been decided, that the value of the property for which a defendant is liable on his replevin bond is not the value at the time of the levy of the writ, but at the time of the trial (Watts v. Overstreet, 78 Texas, 578); and the condition of the defendant's replevin bond is substantially the same as that required of the plaintiff, in so far as it affects this question.     Both are conditioned for the forthcoming of the property, "together with the fruits, hire, or revenue thereof."     Rev. Stats., arts. 4499, 4505.

By another count in its petition, appellant sought to recover the value of certain horses alleged to have been transferred to appellee by the Northwest Texas Horse Company, and by him resold, a part to —— Jacobs and a part to —— Thomas.     Appellant claimed to have a prior mortgage on these horses, executed by the horse company to it, in which was the following clause: "Or if the horse company herein, or any other person whatsoever, shall sell or attempt to sell, or remove or attempt to remove, said property from its present situation before the mortgage is paid, without the consent of said mortgage company, its successors, indorsers, or assigns, or its or their agents, whether said indebtedness be due or not, then it shall be lawful for said mortgage company or its indorsers, successors, and assigns, or any one in its or their name, to take possession of said property wherever found, and to sell the same, or any part thereof, in any manner they see fit, and all notice or advertisement as provided for by law is hereby waived."     It alleged the due record of this mortgage, and also that appellee had actual notice thereof prior to his purchase from the mortgagor.

The evidence shows, that appellee did purchase these horses from the mortgagor with notice of this mortgage, as alleged, and that he subsequently sold them to Jacobs and Thomas, but does not show what had since become of them.     It also shows, that appellant's mortgage originally included about 4000 head of horses, and all of these had been disposed of by the mortgagor to different parties—some of them being shipped out of the State—except something less than 400.     As to whether this was done with or without the consent of appellant, was one of the disputed questions in the case.

In this state of the evidence, the court gave the following charge to the jury: "That there is not sufficient legal evidence before the court or jury to authorize, in any event, a recovery by plaintiff for the value of the horses that were sold by Shelton to Jacobs and Thomas.     The mere fact that such sales were made by defendant, and that said Jacobs and Thomas took into their possession the horses so sold, without further proof that said horses were destroyed, removed from the country, or

plaintiff's mortgage lien thereon was otherwise destroyed, does not in law amount to a conversion of said horses, and therefore you will find for defendant and against plaintiff on this issue; that is, you will find that plaintiff take nothing as to said horses so sold to Jacobs and Thomas."

We believe the view of the law entertained by the court below as expressed in this charge would have been correct previous to the adoption of our chattel mortgage statute in 1879, in the absence of a special provision in the contract prohibiting such sales; but it will be observed that, both by the terms of the mortgage contract in this case and by the Act of 1879, such disposition of the mortgaged property was prohibited.

The section of the act referred to is as follows: "The person making any such instrument shall not remove the property pledged from the county, nor otherwise sell or dispose of the same, without the consent of the mortgagee; and in case of any violation of the provisions of this section, the mortgagee shall be entitled to the possession of the property, and to have the same then sold for the payment of his debt, whether the same has become due or not." 2 Sayles' Civ. Stats., art. 3190b, sec. 6.

In Cooley on Torts, second edition, 527, it is said: "When the mortgagor of chattels is left in possession, he has not only such a special property as will enable him to maintain trover against a wrongdoer, but he has also, in his right of redemption, a property which is or may be valuable, and which he may lawfully sell in recognition of the right of the mortgagee. Such a sale is therefore no conversion of the mortgagee's interest, but a sale in denial of mortgagee's right would be a conversion in him, and perhaps in the purchaser also. It would certainly be a conversion in the purchaser if he took the property on a purchase of the whole interest, and persisted in a denial of the mortgagee's right afterwards. * * * One who buys property must, at his peril, ascertain the ownership; and if he buys of one who has no authority to sell, his taking possession in denial of the owner's right is a conversion."

The authorites referred to in the note—especially Coles v. Clark, 3 Cush., 399; Church v. McLeod, 58 Vt., 541; and Ashmead v. Kellogg, 23 Conn., 70—seem to fully sustain the text. Also, see Jones on Chattel Mortgages, section 490, where a resale of mortgaged property by a purchaser from the mortgagor is treated as a conversion of the mortgagee's interest.

That a mortgagee or lienholder may sue for a conversion of the mortgaged property has been several times decided in this State (Focke v. Blum, 82 Texas, 436); but our attention has not been called to an opinion rendered since the passage of our chattel mortgage act which discusses the evidence necessary to be introduced to show a conversion.

In the case at bar, we understand from the record that Shelton did not make his purchase in recognition of appellant's superior claim

upon the property by reason of its mortgage, nor did he sell to Jacobs and Thomas subject thereto, but all of these acts were in denial of appellant's rights. As this sale was prohibited, both by the statute and the mortgage, we are of opinion that Shelton's act in thus illegally purchasing and selling the mortgaged property made at least a prima facie case of conversion against him, and that the court erred in giving the charge above copied.

The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 7, 1894.