## NUNN v. PADGITT BROS. et al.

(Court of Civil Appeals of Texas. Dallas. Nov. 22, 1913. Rehearing Denied Dec. 20, 1913.)

1. CHATTEL MORTGAGES (§§ 220–222, 225*)—CONVERSION BY MORTGAGOR.

While a chattel mortgagor in possession may sell the property in recognition of the mortgagee's right, a sale in denial of such right would be a conversion by the mortgagor and also by the purchaser if he persisted in denying mortgagee's right.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 468–470; Dec. Dig. §§ 220–222, 225.*]

2. TROVER AND CONVERSION (§ 11*)—OWNERSHIP OF PROPERTY.

Since one who buys personalty must ascertain the ownership thereof at his peril, his possession in denial of the real owner's right if the seller had no authority to sell is a conversion of the property.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 95–98; Dec. Dig. § 11.*]

3. CHATTEL MORTGAGES (§§ 220–222*)—SALE OF PROPERTY—CONVERSION BY MORTGAGOR.

Where the mortgagee of chattels sold the mortgage notes to plaintiff and subsequently purchased the mortgaged property, he became in effect a mortgagor in possession as to plaintiff; and hence his subsequent sale of the property in denial of plaintiff's rights was a conversion.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 468–470; Dec. Dig. §§ 220–222.*]

4. CHATTEL MORTGAGES (§ 225*)—RECORDING—EFFECT BETWEEN PARTIES.

That a chattel mortgagor denied, when he sold property covered by a recorded chattel mortgage, that the property was incumbered would not be a defense to the right of the mortgagee to sue the purchaser of the property for its conversion by the denial of such mortgagee's rights.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 468–470; Dec. Dig. § 225.*]

5. CHATTEL MORTGAGES (§ 225*)—RECORDING—EFFECT AS TO PURCHASERS.

The fact that the county clerk advised purchasers of property covered by a recorded chattel mortgage that the property was not mortgaged would not prevent the purchasers from being liable to the mortgagee for its conversion.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 468–470; Dec. Dig. § 225.*]

6. CHATTEL MORTGAGES (§ 225*)—PURCHASE OF MORTGAGED PROPERTY—CONVERSION BY PURCHASER.

That defendant agreed to advance money with which to purchase property covered by a recorded chattel mortgage only on condition that mortgagors should first convey to her that she might convey to her son and in that method give her what she considered greater security for the money advanced would not prevent defendant's purchase from being a conversion of the property as to mortgagee.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 468–470; Dec. Dig. § 225.*]

7. CHATTEL MORTGAGES (§ 170*)—CONVERSION OF PROPERTY.

Whoever with actual or constructive notice of the chattel mortgage is directly or in-

directly the instrumentality through which a conversion of mortgaged property is brought about is liable for the conversion.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 305; Dec. Dig. § 170.*]

**8. CHATTEL MORTGAGES (§ 204*)—RECORDING OF MORTGAGE — PERSONS AFFECTED — PURCHASER OF MORTGAGED NOTES.**

Rev. Civ. St. 1911, art. 5661, provides that all persons shall be charged with notice of a chattel mortgage duly registered "and of the rights of the mortgagee, his assignee or representative thereunder," and article 5659 provides for discharging of mortgage by acknowledging satisfaction of the debt upon the registry book. *Held*, that the failure of the purchaser of chattel mortgage notes to have the assignment of the notes to him recorded would not prevent persons purchasing the property from being charged by the registration with notice of the mortgage and of his rights thereunder.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 451; Dec. Dig. § 204.*]

**9. CHATTEL MORTGAGES (§ 225*)—RIGHTS OF ASSIGNEE—CONVERSION OF PROPERTY.**

An assignee of notes secured by a recorded chattel mortgage was not negligent in permitting the property to remain in the possession of one who he knew had purchased it from the mortgagor, so as to prevent him from recovering for its conversion by sale, in view of Rev. Civ. St. 1911, art. 5665, making chattel mortgages void against subsequent purchasers, etc., unless registered, where the property remains in mortgagor's possession.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 468–470; Dec. Dig. § 225.*]

**10. CHATTEL MORTGAGES (§ 229*) — CONVERSION OF PROPERTY—ACTIONS—AMOUNT OF RECOVERY.**

Where the value of property covered by a recorded chattel mortgage exceeds the amount of the debt, the judgment, in an action by a mortgagee for conversion, should be for the debt and, if the debt exceeds the value of the property, should be for such value.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 479–483; Dec. Dig. § 229.*]

Appeal from Dallas County Court; W. F. Whitehurst, Judge.

Action by W. G. Nunn against Padgitt Bros. and others. From a judgment for defendants, plaintiff appeals. Reversed and rendered.

Wood & Wood, of Dallas, for appellant. Alex F. Weisberg, J. Hart Willis, and Spence, Knight, Baker & Harris, all of Dallas, for appellees.

RASBURY, J. Appellant sued appellees for the value of certain personal property alleged to have been converted by appellees and upon which appellant, at the time of such conversion, had a mortgage lien properly registered to secure an indebtedness due him. The appellees in effect urged as a defense to the suit that they used proper diligence to ascertain the existence of the lien and failed to do so, and hence were innocent purchasers, and further that they never took actual possession of the property; and hence there was no conversion of same.

It appears from the evidence in substance that J. M. Mullins and Davis McMackin were partners in business under the firm name of Dallas Electrical Construction Company in the city of Dallas. W. G. Nunn, of Ladonia, Tex., an acquaintance of some years of both Mullins and McMackin, upon their request, indorsed their note for $100 in order to enable them to negotiate same at bank, which was done. Nunn, as indorser, was later compelled to pay same by reason of the default of Mullins and McMackin. Subsequent to the circumstances related above, Mullins sold McMackin his interest in the Dallas Electrical Construction Company. In payment of part or all of the purchase price, Mullins accepted McMackin's 18 promissory notes, each for $75, secured in payment by chattel mortgage on the property, for the value of which this suit was brought. The mortgage was registered as directed by statute, and recites the transaction to be for the purposes we have just stated, and subrogates by its terms all purchasers of the notes to the benefits of the mortgage. After the sale by Mullins to McMackin, in order to enable Mullins to borrow $500 from the Guaranty State Bank & Trust Company, Nunn signed a note for that amount jointly with Mullins. The bank accepted the note. To secure the bank in the payment of the $500 note and Nunn in his indorsement thereof, as well as the repayment to him of the amount paid out on the $100 note, Mullins transferred the 18 McMackin notes to the bank. McMackin paid off sufficient of the mortgage notes to reduce the $500 note to $271, when payments ceased. Thereupon Nunn was compelled to take over the balance, which he did, and whereupon the bank transferred him the unpaid mortgage notes. Nunn attempted to collect the amount due him by Mullins and McMackin but was unable to do so. In the meanwhile, for some reason and in manner not made clear by the record, Mullins repurchased from McMackin the business of the Dallas Electrical Construction Company and operated same for about one month, when he sold a portion of the tools, implements, etc., to one of the appellees, Mrs. Amelia Wunderlich; such portion being covered by the mortgage securing the payment of the 18 notes given by McMackin to Mullins, transferred by Mullins to the bank and by the bank transferred to Nunn. Mrs. Wunderlich paid $260 for the property sold her by Mullins, and the transfer was by bill of sale warranting title free of liens, etc. On the same day she purchased the property, Mrs. Wunderlich, in consideration of the note of Frank Courtney and Emil Wunderlich, her son, for $260, due one year from date with 8 per cent. interest, conveyed the same property to them and as security for payment of the note retained a lien or mortgage against the property so conveyed. By

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the terms of the conveyance Courtney and Wunderlich are required to remove the property to 126 Bryan street, to keep it insured with loss payable to Mrs. Wunderlich, not to remove same from its location without her consent, and to keep same in good condition and repair, and provided for the usual conditions of forfeiture and seizure in case of default in payment of the note, etc. Before buying the property, both Mrs. Wunderlich and her attorney inquired particularly of Mullins, who was then in possession of the property by virtue of his repurchase from McMackin, if there was any lien or incumbrance against the property and if any other person had any interest therein, and he assured them that no liens existed and he was sole owner thereof. Mrs. Wunderlich and her son, Emil Wunderlich, testified that they inquired of the county clerk concerning a mortgage against the property, and that they were informed none was of record. The same parties also testified that, while Mrs. Wunderlich took a conveyance from Mullins to herself and in turn conveyed to Emil Wunderlich and Frank Courtney, she was not in fact buying the property for her own use but for her son and Courtney and took such method, under advice of counsel, as the best plan of securing herself in the payment of the money advanced to them, which was in fact only a loan. Appellant, Nunn, before filing suit, attempted to locate the mortgaged property, but was unable to do so. It was developed upon trial of the case that same was in possession of Emil Wunderlich in storage. The witness Boettiger testified the same was of the value of $295. Mrs. Wunderlich paid Mullins $260 therefor. Nunn's debt after this suit was filed was reduced to $274.16 by payments received from some bankrupt proceeding, presumably against either McMackin or Mullins. The essentials of the facts here stated are undisputed. Upon trial before jury there was a verdict against appellant followed by judgment, from which he has appealed.

The appellant has filed two assignments of error; the first attacking the charge of the court, and the second challenging the sufficiency of the evidence to sustain the verdict and judgment. We think the criticism of the charge by appellant correct, but we forego a discussion thereof for the reason that we think the cause should be reversed and judgment here rendered for appellant on the grounds urged in the second assignment.

[1, 2] As applicable to the undisputed facts in this case, it was said in Western Mortgage & Investment Co., Ltd., v. Shelton, 8 Tex. Civ. App. 550, 29 S. W. 494, quoting from an eminent authority (Cooley's Second Ed. on Torts, 527): "When the mortgagor of chattels is left in possession, he has not only such a special property as will enable him to maintain trover against a wrongdoer, but he has also, in his right of redemption, a property which is or may be valuable, and which he may lawfully sell in recognition of the right of the mortgagee. Such a sale is therefore no conversion of the mortgagee's interest, but a sale in denial of the mortgagee's right would be a conversion in him, and perhaps in the purchaser also. It would certainly be a conversion in the purchaser if he took the property on a purchase of the whole interest and persisted in a denial of the mortgagee's right afterwards." Also: "One who buys property must, at his peril, ascertain the ownership; and, if he buys of one who has no authority to sell, his taking possession in denial of the owner's right is a conversion." See, also, McCown et al. v. Kitchen, 52 S. W. 801; Scaling v. First National Bank, etc., 39 Tex. Civ. App. 154, 87 S. W. 715; Buffalo Pitts Co. v. Stringfellow-Hume Hardware Co., 129 S. W. 1161.

[3] Mullins, by his sale of the notes to Nunn, became, after his purchase of the property from McMackin, in effect a mortgagor in possession and had no right of course to sell in denial of the mortgage, and the result under the cases cited and the undisputed evidence is that either Mrs. Wunderlich or Emil Wunderlich, her son, and Frank Courtney bought and held before and upon trial the mortgaged property in denial of Nunn's mortgage.

[4] Incidental to a discussion of the question of who in fact converted the property, we divert long enough to say that the denial by Mullins of the existence of the mortgage is without force as a defense to Nunn's right to recover in case of conversion. To hold that mortgages registered under statutory direction can be ignored by third persons upon the assurance of those in possession of the property that such mortgages do not in fact exist would be to utterly destroy the very purpose of the requirement instead of sustaining it.

[5] Nor do we think that the testimony of Mrs. Wunderlich and her son that the county clerk advised them that there was no mortgage upon the property entitled to any weight. We do not deny the truth of the testimony. Such information, we conclude, was given at the county clerk's office. The information was incorrect, however, since the mortgage was in fact registered there and an inspection of the record would have shown as much. We do not understand that it is the right of the public to rely upon the clerk as to what the records of his office do or do not disclose, but that it is the right of the public to inspect such records and themselves ascertain their contents, and that the public will be bound by the records alone as they actually exist. We then come to the question of whether appellee Mrs. Wunderlich (her son and Courtney not being parties to the suit) under the evidence bought the property, and, if she did, whether it was in

recognition or denial of the mortgage, and, if she did not purchase the property, whether the facts stated in law constitute conversion. That she did not buy or incumber the property in recognition of the mortgage is not denied.

[6] To establish that she did not do so in denial thereof, so as to constitute conversion, the claim is made that the form of conveyance to her was not what it purported to be, to wit, a sale, but simply a vehicle to give Mrs. Wunderlich security of greater dignity and was unaccompanied by actual physical asportation of the property. Waiving any question of Mrs. Wunderlich's right to deny, in an equitable proceeding, her own solemn declaration that she was the owner of the property, we nevertheless believe the proposition unsound. Mrs. Wunderlich agreed to advance the money with which to purchase the property only on condition that Mullins first conveyed it to her that she might in turn convey it to her son and Courtney and by such method secure what she considered security of a greater dignity for the money she was advancing, but which, however considered, is but what our statute denominates a chattel mortgage; and it was by her direction and with her knowledge that the property was so purchased and incumbered and then delivered to her son and Courtney. To hold that such acts do not establish conversion would, in our opinion, result in great injustice to parties acquiring evidences of debt secured by chattel mortgages duly registered. As illustrative of the point, second mortgages would and could acquire the dignity of first mortgages, since it is here urged exactly that Mrs. Wunderlich is in effect but a mortgagee, and to which we agree.

[7] The true rule, it seems to us, is that whosoever directly or indirectly is the instrumentality through which the conversion is accomplished is liable for the conversion, when such conversion is made with either actual or constructive notice of the pre-existing debt and mortgage. Constructive notice in this proceeding is not denied, and, that being true, appellee took the property as her own or as security for her debt at her peril, and, if by such taking it was lost or destroyed, she is liable for the value thereof. We are not to be understood, of course, as holding that second mortgages cannot be accepted without constituting conversion, but that such second mortgagor cannot under guise of a purchase sell to another, who in turn wastes or destroys same, and then defend, in a suit for conversion, on the ground that he was but a second mortgagor and, not having actually laid hands on the property, is not liable. But it is further urged that, Mrs. Wunderlich having bought the property or loaned money thereon in good faith, she should be protected for the reason that Nunn was negligent in not placing upon the record an assignment of the notes, so as to give Mrs. Wunderlich notice thereof, and in permitting Mullins to remain in possession thereof after repurchasing same from McMackin. We have said that, while Mrs. Wunderlich may have acted in good faith in the purchase of the property or in loaning money thereon, she did so subject to or with full knowledge of the prior mortgage, whichever theory of the transaction may be adopted.

[8] Nor does the failure of Nunn to place upon the record an assignment of the notes affect the notice imported by the registration of the mortgage. Article 5661, R. S. 1911, provides that, when chattel mortgages are registered as was the one in this controversy, "all persons shall be thereby charged with notice thereof, and of the rights of the mortgagee, his assignee or representative thereunder." Article 5659, R. S. 1911, provides that the only way by which satisfaction of mortgages may be entered of record, and as corollary relied upon by those subsequently dealing with the property, is by acknowledging satisfaction of the debt upon the book containing the registry of the mortgage. No such satisfaction was shown on trial in this controversy.

[9] In like manner do we think the claim that Nunn was negligent in permitting the property to remain in possession of Mullins untenable. Even though he was aware that the title to the property had passed back into the possession of Mullins, there was no legal right in Nunn to prevent it, since Mullins had the right to purchase and McMackin the right to sell subject to the existing lien. The statutory provisions relating to chattel mortgages contemplate the existence of valid and enforceable mortgages where the property is permitted to remain in the possession of the mortgagor and directs that in all such cases the mortgage shall be void against creditors, subsequent purchasers, and mortgagees or lienholders, unless such mortgage or lien shall be registered in the manner provided by the other provisions of the act. Article 5655, R. S. 1911. As we have said, the mortgage in this controversy was so registered.

[10] The undisputed evidence shows the value of the property converted by Mrs. Wunderlich to be $295. Nunn's debt is undisputed and is $274.16. The rule is that, when the converted property exceeds the amount of the debt, the judgment shall be for the debt, and, when the debt exceeds the value of the property, it shall be for such value. In the application of that rule the judgment of the trial court is reversed, and judgment here rendered for appellant against Mrs. Wunderlich for the amount of his debt.

Reversed and rendered.