**BORDER NAT. BANK OF EL PASO v. CAMPBELL & ROSSON LIVE STOCK COMMISSION CO.   (No. 1418.)\***

(Court of Civil Appeals of Texas. El Paso. Feb. 15, 1923.   Rehearing Denied March 8, 1923.)

**1. Chattel mortgages ⬉170(1)—Commission firm selling cattle not relieved from "conversion" by remitting proceeds.**

Where a mortgage provided that mortgagor should not remove cattle from the county or sell or dispose of them in a manner inconsistent with rights of mortgagee, without its written permission, on removal of the cattle from the county, mortgagee was entitled to the proceeds of their sale, and the fact that a commission company that assisted the mortgagor in their sale remitted the proceeds of the sale less expenses at the direction of the mortgagor

did not relieve them from liability for conversion.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conversion.]

**2. Chattel mortgages ⑥⇒170(1)—Payment to mortgagee of proceeds from sale of mortgaged cattle held to relieve commission firm from conversion pro tanto.**

Where mortgaged cattle were shipped from mortgagor's county to a commission firm in another county, and there sold by the firm and the proceeds remitted on direction of mortgagor to a bank for his account, *held*, that under the evidence the payment by mortgagor to mortgagee of the net amount received from sale of the cattle relieved the commission firm from its conversion .pro tanto.

Error from District Court, Midland County; Chas. Gibbs, Judge.

Action by the Border National Bank of El Paso against the Campbell & Rosson Live Stock Commission Company and others. Judgment for plaintiff denied full relief prayed for, and plaintiff brings error as against the named defendant. Reformed and affirmed.

Whitaker & Peticolas, of El Paso, for plaintiff in error.

Capps, Cantey, Hanger & Short, of Fort Worth, J. M. Caldwell and O. W. Fannin, both of Midland, H. G. Russell, of Pecos, and Jno. L. Dyer and R. A. D. Morton, both of El Paso, for defendant in error.

WALTHALL, J. This suit was brought by the Border National Bank of El Paso, Tex., against B. C. Girdley, O. P. Jones, Luther Holman, Cody Bell, H. M. Horton, John K. Rosson, David L. Campbell, and L. E. Davis, the last-named three composing the firm of Campbell & Rosson Live Stock Commission Company, to recover as to Girdley on a certain promissory note in the sum of $16,800, interest and attorney's fees, executed by Girdley and payable to plaintiff bank, and the foreclosure of a chattel mortgage on 420 head of Hereford and Durham yearlings, heifers, and steers branded double half circle on the left side; and as to some other defendants plaintiff alleged that certain of said cattle were in their possession, and as to such plaintiff sought a foreclosure of its chattel mortgage; as to the defendants Campbell, Rosson, and Davis, plaintiff alleged a conversion of some of the cattle, and as to such plaintiff sought to recover its damages. ·

On the trial of the case in the district court, all issues as to all parties were finally determined, and from which no appeal is prosecuted, save and except the issues joined between the plaintiff bank and Campbell, Rosson, and Davis, composing the said commission company, and the issues made between Campbell, Rosson, and Davis on their cross-action with the Midland National Bank.

As between the plaintiff bank and Campbell, Rosson, and Davis, and between Campbell, Rosson, and Davis and the Midland National Bank, the material facts at issue are substantially as follows:

On April 7, 1920, Girdley executed his certain promissory note, payable to the plaintiff, Border National Bank, in the sum of $16,800, payable July 6, 1920, bearing interest and providing for attorney's fees. To secure the payment of said note, Girdley executed to the payee bank a chattel mortgage on 420 head of Hereford and Durham yearling heifers and steers, branded double half circle on the left side, same including and covering all of his cattle in said brand wherever found and their increase. The mortgage was recorded in Midland and Upton counties in April, 1920. The mortgage is in the usual form of such instruments and provides among other things that, if the mortgagor should attempt to move said property or any part thereof out of or away from the county or place in which they were then located, or to sell or dispose of same in any manner inconsistent with the rights of the mortgagee without written permission of the "mortgagor" (evidently meaning mortgagee) in that event the trustee named could take the property and sell same whether the indebtedness was due or not. No written permission to remove or sell the cattle is shown by the record. Said note was reduced by payments to $14,000 as principal, and payment extended by several renewal notes, the last renewal note falling due on July 14, 1921.

During all of said time, Girdley resided in Midland county, Tex., and the cattle were located and ranged in Upton county, Tex. On May 26, 1920, without the consent of the plaintiff, Border National Bank, Girdley shipped from Rankin, Upton county, 26 head of said cattle, and on June 15th shipped from same place 36 head of said cattle, both shipments made to Campbell & Rosson Live Stock Commission Company at Fort Worth. The said commission company duly received each of said shipments and sold said cattle on the open market at Fort Worth to speculators in cattle.

The evidence does not show what became of the cattle after they were sold. The first or May shipment, of 26 head brought $1,064 gross, and net $997.30, the reduction costs being for freight, yardage, feed, inspection, and insurance, and commission for selling. The second or June shipment of 36 head brought $1,567.50 gross, net $1,453.84, the reduction costs being for war tax, freight, yardage, feed, inspection, and insurance, and commission for selling. The charges deducted in each shipment were the usual and customary charges for handling such shipments. The cattle sold at their market values. Each of

⑥⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the above net sums of money for the two shipments were, under the instructions of Girdley, paid by the commission company into the First National Bank of Fort Worth to be credited to the account of the Midland National Bank, account of Girdley. Appellees retained the difference between the gross and net sales, and with it discharged in each instance the above-mentioned expenses, costs, and commissions. The First National Bank of Fort Worth was a correspondent bank with the Midland National Bank, and deposits made by the customers of the Midland National Bank at Fort Worth were made at the Fort Worth First National Bank, to the credit of such depositors of the Midland National Bank, and the deposits were of such character. Campbell, Rosson, and Davis were engaged in the live stock commission business at the Fort Worth Stockyards and handled said cattle as such commission men, and deposited the net proceeds of the two shipments as above, and did not have or retain in their possession any of the said cattle or the proceeds from the sales, except as commission men, and the commissions for making such sales. The commission company received, handled and sold said cattle, and made the deposits of the net proceeds as above, on the advice by wire as follows: On May 26, 1920, wire reading:

"Shipping Rankin today three cars mixed cattle weigh and account separate for double quarter circle cattle, if any proceeds First Fort Worth credit Midland National Balance Drovers at Kansas City.        •        B. C. Girdley."

That shipment contained 26 head so branded. June 14, 1920, shipment was received, handled, sold, and net proceeds deposited as above on wire reading, omitting formal address:

"Shipped yesterday from Rankin one car heifers proceeds First Fort Worth credit Midland National my use.        B. C. Girdley."

Each of the above net proceeds duly reached the Midland National Bank as directed and placed therein to the account and for the use of Girdley. At the several times of said shipments of cattle and the receipt and deposits of the proceeds, as above, Girdley was the active cashier of the Midland National Bank. On receipt of the above two deposits at the Midland National Bank, Girdley made two deposit slips and the bank bookkeeper entered them as follows:

"Deposited with the Midland National Bank of Midland, Texas. By B. C. Girdley, Cr. 5/27—1920.
"Checks as follows:
1st Ft. W.........................$997.30
   26 hfrs.
Total ...........................$997.30
"Received by G."

"Deposited with the Midland National Bank of Midland, Texas.    By B. C. Girdley, Cr. 6/15/1920.
"Checks as follows:
Fort Worth.......................$1,453.84
   36 ylgs.
Total ...........................$1,453.84
"Rec'd by G."

The Border National Bank received from Girdley the following letter:

"Midland, Texas, July 6, 1920.
"Border National Bank, El Paso, Texas, Mr. Harvey, President.—Gentlemen: I was at my ranch Sunday 4th with the idea of shipping the cattle on which you hold a mortgage to secure the $16,800 note due today, but find that they are not all fat enough to ship. I did, however, sell 50 head of average yearlings at $50.00 per head and inclose checks $2,500.00 to be applied. The cattle are fattening fast and if agreeable would like for you to handle the 90 days' renewal inclosed and fill in the check inclosed for the interest and revenue stamps. The yearlings could go now but I believe that a little while longer will produce good gain. I trust that this will be satisfactory, however, shall endeavor to promptly meet your request in the matter. Thanking you,
"Very truly,        B. C. Girdley."

The check mentioned in the letter was paid by the Midland Bank on July 12, 1920. While the fact is somewhat doubtful, we think it can be stated with sufficient certainty that Girdley did not in May, June, or July, 1920, sell and deliver 50 head of the double half circle brand of cattle at $50 per head. The record shows no sale of the mortgaged cattle to any person other than the 62 head, until about August, 1920. On October 6, 1920, the Border National Bank received a letter from Girdley inclosing a renewal note for $14,000, and a check for $300 to cover interest and war tax, stating that on account of the cattle market the cattle should be held longer, and asking that the bank accept the renewal note. By renewals the indebtedness was extended by renewal notes to July 14, 1921. The above seems to us to cover all the facts material to the issues presented here, except some later referred to and applicable more particularly to issues under discussion.

On the above facts as to the receipt, handling, sale, and deposits of the net proceeds of the sales of the cattle, pleaded by Campbell, Rosson, and Davis, they denied any notice or knowledge of the chattel mortgage held by the Border National Bank, and say the cattle were shipped to them in regular course of business at the Fort Worth market; that they sold said cattle on the open market at public sale to purchasers in the usual course of business; that none of said cattle were retained by them in their possession, and were never in their possession save and except as commission merchants in the pens of the

Fort Worth Stockyards Company, and deny the conversion of said cattle. They plead in the alternative that if it should be held that the facts show a conversion by them, in that event, by cross-action they plead over against the Midland National Bank.

The Midland National Bank pleaded the facts substantially as above stated in reply to said cross-action of Campbell, Rosson, and Davis, and deny liability.

The undisposed of issues as between the Border National Bank, Campbell, Rosson, and Davis and the Midland National Bank and some other defendants, not necessary to state here, came to trial. Girdley having filed no answer, judgment by default was rendered in favor of the plaintiff bank as to him, foreclosing its lien on the cattle. The court also instructed a verdict in favor of the bank as to Jones. The court also, on motion, entered judgment in favor of the Midland National Bank as to the cross-action of Campbell, Rosson, and Davis. The court also instructed a verdict in favor of Campbell, Rosson, and Davis, and against the plaintiff bank. The Border National Bank appeals from the judgment in favor of Campbell, Rosson, and Davis, and Campbell, Rosson, and Davis appeal from the judgment in favor of the Midland National Bank.

## Opinion.

The primary question presented on this appeal is as to the liability of appellees Campbell, Rosson, and Davis to the Border National Bank for the alleged conversion of the 62 head of cattle, by reason of the sales of said cattle, and the disposition of the proceeds of such sales, as above stated. At the times said sales were made, the Border National Bank had a valid subsisting chattel mortgage on said cattle to secure the unpaid Girdley note it then held.

[1] It is insisted by plaintiff in error bank that the undisputed evidence establishing the above facts show that Campbell, Rosson, and Davis, by the sale of said cattle under the circumstances above stated, so aided Girdley in disposing of the cattle and the proceeds of the sales as to constitute a conversion of the cattle, as a matter of law, and that it was error to render the judgment in favor of Campbell, Rosson, and Davis.

Defendants in error commission company insist that the facts do not show a conversion by them of the cattle, since they did not purchase the cattle, and merely received the proceeds of the sale; that Girdley was entitled to receive the proceeds, and that by his direction the net proceeds were deposited to his credit as shown; and further that the proceeds from the sales of the cattle were paid by Girdley to the plaintiff in error bank, less the expenses of shipping and making the sales, as above. We do not concur in the views expressed by defendants in error, to

the effect that Girdley was entitled to the possession of the cattle after their removal from Upton county; nor was he entitled to the proceeds from the sale of the cattle. The mortgage provided that Girdley should not remove the cattle from the county or place in which they were then located, or to sell or dispose of them in any manner inconsistent with the rights of the bank, without its written permission, and that should he attempt to do so the trustee in the mortgage could seize and dispose of the cattle whether the debt was due or not. It is not contended that Girdley had the written consent of the bank, or any consent, to remove, ship, or sell the cattle at the time he did so. Certainly the commission company had no more right to sell the cattle, or to receive the proceeds from the sales, than had Girdley. The sales of the cattle at the Fort Worth stockyards by the commission company, we think, was in aid of Girdley in disposing of them. Only two questions seem to remain in defense of the charge of conversion: First, does the fact that Campbell, Rosson, and Davis, in making the sales, and acting only as a stock commission company, both in making the sales, and in the disposition made of the proceeds of the sales, relieve them from the charge of conversion, and, second, conceding the conversion, in the first instance, by reason of said sales and the disposition of the proceeds as shown, did the payment by Girdley on the 6th of July, 1920, of $2,500 to the plaintiff in error, bank, relieve defendants in error of further liability?

On the first question suggested we think Hunter et al. v. Abernathy (Tex. Civ. App.) 188 S. W. 269 in point. In that case, Hunter, the mortgagor, did not have the right to remove the cotton from the county or otherwise sell or dispose of it without the consent of the mortgagee, and that if he did the mortgagee was entitled to the possession and sale of the cotton, and where the cotton was shipped out of the county to commission merchants who sold same, remitting the proceeds, less commissions and transportation charges, to Hunter, the commission merchants were held liable for conversion of the cotton. In the suit against the commission merchants for conversion of the cotton, it was held that the commission merchants were not exempt from the operation of the rule, that any person is guilty of wrongful conversion of property who aids and assists the mortgagor in so disposing of the proceeds thereof as to defeat the mortgagee's interest therein, and referred to a number of cases as so holding. We think we need not further multiply cases so holding.

[2] The second suggested question is not so easy of solution. We think that if Girdley paid the proceeds from the sales of the cattle into the plaintiff bank, and the bank received and accepted the payment, knowing

that such payment was the proceeds from the sales of the mortgaged cattle, such payment would be a complete defense to the appellees against the charge of conversion of the cattle or the proceeds from the sales, at least to the extent of the amount of the proceeds of the mortgaged cattle paid to the appellant bank. The bank had no mortgage on any of Girdley's cattle except the double half circle cattle. The 62 head of the cattle reported by appellees' commission company were all the cattle in that brand sold by the commission company. The gross proceeds from the sales of the two shipments were $2,632.37, and Girdley paid to the appellant bank $2,500 on the 6th of July, 1920, and after each of the two sales of the cattle through the appellees, Girdley wrote the appellant bank that he was at his ranch on a day shortly previous to the time of his letter and "with the idea of shipping the cattle on which you hold a mortgage to secure the $16,800 note due today," and said "I did, however, sell 50 head of average yearlings at $50.00 per head and inclose check $2,500.00 to be applied." The record shows that the check referred to in the letter was on the Midland National Bank, was of the date of the letter, and was paid by the Midland Bank on the 12th day of July. While all that Girdley said in the letter was probably not true as a fact, it seems sufficient, however, to advise the bank that the money remitted was the proceeds from the sales of the cattle on which the bank held its mortgage, though the letter in no way advised the bank that the remittance was the proceeds from the sales of the cattle made through appellees, nor is that fact made to appear otherwise. The record shows that while Girdley disposed of a number of the mortgaged cattle to Holman, Jones, and Cody Bell, the sale to Holman and Jones occurred in September, 1920, and to Cody Bell "as late as August," 1920. No sale of the mortgaged cattle is shown to have occurred prior to the payment by Girdley of the $2,500 other than the sales by appellees.

Without stating in detail the Girdley deposits and balances in the Midland Bank in 1920, they show that on May 27th a deposit was made of $997.30, and on June 16th, $1,453.84, the two deposits corresponding respectively in the amounts of the net proceeds of the two sales by appellees. The deposit slips, as introduced, show that the deposit items in the bank were on account of the mortgaged cattle. On the 7th of July, the date of the $2,500 check to appellant, Girdley's balance in the Midland Bank was $128.52, and on the 12th day of July the date of its payment by the Midland Bank, his balance was $2,600. But it seems to us that the condition of Girdley's deposits and balances in the Midland Bank as above would not destroy the effect of the payment to the extent of the net proceeds from the sales of the cattle made by Girdley to appellant, and its acceptance of such payment, as such proceeds, where the appellant was advised that the payment was the proceeds from the sales of the mortgaged cattle.

The appellant, however, is entitled to receive the gross proceeds from such sales, and is not limited to the net proceeds, and to that extent the judgment must be reformed. The difference between the gross and net proceeds, and retained by the appellees, is $181.23, for which amount judgment is here rendered for appellant and against appellees Campbell, Rosson, and Davis.

The remaining question arises on the issue presented in the cross-action of Campbell, Rosson, and Davis against the Midland National Bank. There is no controversy between Campbell, Rosson, and Davis and the Midland National Bank on the facts, and, as we see it, nothing to submit to the jury. The facts are stated above. The Midland Bank had only the net proceeds from the sales of the cattle, and if we are not in error in the above holding as between the Border National Bank and Campbell, Rosson, and Davis, there could be no controversy on the cross-action between Campbell, Rosson, and Davis, and the Midland Bank.

With the judgment as above reformed, the case is affirmed.

### Opinion on Rehearing.

On defendants in error's motion for rehearing it is ordered that Campbell & Rosson Live Stock Commission Company have judgment over against B. C. Girdley for the sum of $181.23, the amount for which judgment was rendered in favor of the Border National Bank against defendants in error, and as to all other matters presented the motion for rehearing is overruled.