**CAMPBELL & ROSSON LIVE STOCK COMMISSION CO. et al. v. BORDER NAT. BANK OF EL PASO. (No. 460–3987.)**

(Commission of Appeals of Texas, Section B. April 1, 1925.)

1. **Chattel mortgages �köä170(1) — Mortgagee accepting proceeds from sale of cattle in violation of mortgage with knowledge thereof cannot complain of sale.**

Mortgagee of cattle, accepting proceeds from sale of portion of cattle knowing that they were sold in violation of provision in mortgage, and continuing to transact business with mortgagor, *held* estopped from suing commission firm for alleged conversion of cattle because of such sale.

2. **Chattel mortgages �köä177(4) — Mortgagee suing for conversion of cattle by sale, in violation of mortgage held entitled only to net proceeds.**

Mortgagee of cattle, accepting net proceeds from sale of portion of such cattle, knowing they were sold in violation of terms of mortgage, and thereafter suing commission firm who sold them for conversion, *held* not entitled to gross proceeds without deduction of expenses usually incident to such transaction.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by the Border National Bank of El Paso against the Campbell & Rosson Live Stock Commission Company and others. Judgment for plaintiff, denying it full relief prayed for, was reformed and affirmed by the Court of Civil Appeals (248 S. W. 780), and both parties bring error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed.

Capps, Cantey, Hanger & Short, of Fort Worth, for plaintiffs in error.

Whitaker & Peticolas, of El Paso, for defendant in error.

POWELL, P. J. The nature and result of this case in the trial court are splendidly stated by the Court of Civil Appeals as follows:

"This suit was brought by the Border National Bank of El Paso, Tex., against B. C. Girdley, O. P. Jones, Luther Holman, Cody Bell, H. M. Horton, John K. Rosson, David L. Campbell, and L. E. Davis, the last named three composing the firm of Campbell & Rosson Live Stock Commission Company, to recover as to Girdley on a certain promissory note in the sum of $16,800, interest and attorney's fees, executed by Girdley, and payable to plaintiff bank, and the foreclosure of a chattel mortgage on 420 head of Hereford and Durham yearlings, heifers, and steers branded double half circle on the left side; and, as to some other defendants, plaintiff alleged that certain of said cattle were in their possession, and as to such plaintiff sought a foreclosure of its chattel mortgage; as to the defendants

Campbell, Rosson, and Davis, plaintiff alleged a conversion of some of the cattle, and as to such plaintiff sought to recover its damages.

"On the trial of the case in the district court all issues as to all parties were finally determined, and from which no appeal is prosecuted, save and except the issues joined between the plaintiff bank and Campbell, Rosson, and Davis, composing the said Commission Company, and the issues made between Campbell, Rosson, and Davis on their cross-action with the Midland National Bank.

"As between the plaintiff, bank, and Campbell, Rosson, and Davis, and between Campbell, Rosson, and Davis and the Midland National Bank, the material facts at issue are substantially as follows:

"On April 7, 1920, Girdley executed his certain promissory note, payable to the plaintiff, Border National Bank, in the sum of $16,800, payable July 6, 1920, bearing interest and providing for attorney's fees. To secure the payment of said note Girdley executed to the payee bank a chattel mortgage on 420 head of Hereford and Durham yearling heifers and steers, branded double half circle on the left side, same including and covering all of his cattle in said brand wherever found and their increase. The mortgage was recorded in Midland and Upton counties in April, 1920. The mortgage is in the usual form of such instruments, and provides, among other things, that if the mortgagor should attempt to move said property or any part thereof out of or away from the county or place in which they were then located, or to sell or dispose of same in any manner inconsistent with the rights of the mortgagee without written permission of the 'mortgagor' (evidently meaning mortgagee), in that event the trustee named could take the property and sell same whether the indebtedness was due or not. No written permission to remove or sell the cattle is shown by the record. Said note was reduced by payments to $14,000 as principal, and payment extended by several renewal notes, the last renewal note falling due on July 14, 1921.

"During all of said time Girdley resided in Midland county, Tex., and the cattle were located and ranged in Upton county, Tex. On May 26, 1920, without the consent of the plaintiff, Border National Bank, Girdley shipped from Rankin, Upton county, 26 head of said cattle, and on June 15th shipped from same place 36 head of said cattle, both shipments made to Campbell & Rosson Live Stock Commission Company at Fort Worth. The said Commission Company duly received each of said shipments and sold said cattle on the open market at Fort Worth to speculators in cattle; the evidence does not show what became the cattle after they were sold. The first or May shipment of 26 head brought $1,064, gross, and net $997.30, the reduction costs being for freight, yardage, feed, inspection, and insurance, and commission for selling. The second or June shipment of 36 head brought $1,567.50 gross, net $1,453.84, the reduction costs being for war tax, freight, yardage, feed, inspection, and insurance, and commission for selling. The charges deducted in each shipment were the usual and customary charges for handling such shipments.

The cattle sold at their market values. Each of the above net sums of money for the two shipments were, under the instructions of Girdley, paid by the Commission Company into the First National Bank of Fort Worth to be credited to the account of the Midland National Bank, account of Girdley. Appellees retained the difference between the gross and net sales, and with it discharged in each instance the above-mentioned expenses, costs, and commissions. The First National Bank of Fort Worth was a correspondent bank with the Midland National Bank, and deposits made by the customers of the Midland National Bank at Fort Worth were made at the Fort Worth First National Bank to the credit of such depositors of the Midland National Bank, and the deposits were of such character. Campbell, Rosson, and Davis were engaged in the live stock commission business at the Fort Worth stockyards, and handled said cattle as such commission men, and deposited the net proceeds of the two shipments as above, and did not have or retain in their possession any of the said cattle or the proceeds from the sales, except as commission men, and the commissions for making such sales. The Commission Company received, handled, and sold said cattle, and made the deposits of the net proceeds as above, on the advice by wire as follows, on May 26, 1920, wire reading: 'Shipping Rankin today three cars mixed cattle weigh and account separate for double quarter circle cattle, if any proceeds First Fort Worth credit Midland National balance Drovers at Kansas City. B. C. Girdley.'

"That shipment contained 26 head so branded. June 14, 1920, shipment was received, handled, sold, and net proceeds deposited as above on wire reading, omitting formal address: 'Shipped yesterday from Rankin one car heifers proceeds First Fort Worth credit Midland National my use. B. C. Girdley.'

"Each of the above net proceeds duly reached the Midland National Bank as directed and placed therein to the account and for the use of Girdley. At the several times of said shipments of cattle and the receipt and deposits of the proceeds, as above, Girdley was the active cashier of the Midland National Bank. On receipt of the above two deposits at the Midland National Bank, Girdley made two deposit slips and the bank bookkeeper entered them as follows:

" 'Deposited with the Midland National Bank of Midland, Texas, by B. C. Girdley, Cr., 5/27—1920, Checks as follows: 1st Ft. W., $997.30 26 hfrs. Total, $997.30 Received by G.'

" 'Deposited with the Midland National Bank of Midland, Texas, by B. C. Girdley, Cr., 6/15/1920, Checks as follows: Fort Worth, $1,453.84. 36 ylgs. Total $1,453.84. Rec'd by G.'

"The Border National Bank received from Girdley the following letter:

" 'Midland, Texas. July 6, 1920. Border National Bank, El Paso, Texas. Mr. Harvey, President—Gentlemen: I was at my ranch Sunday 4th with the idea of shipping the cattle on which you hold a mortgage to secure the $16,800 note due today, but find that they are not all fat enough to ship. I did, however, sell 50 head of average yearlings at $50 per head, and enclose checks $2,500 to be applied. The cattle are fattening fast and if agreeable would like for you to handle the 90 days renewal enclosed and fill in the check enclosed for the interest and revenue stamps. The yearlings could go now but I believe that a little while longer will produce good gain. I trust that this will be satisfactory, however, shall endeavor to promptly meet your request in the matter. Thanking you, Very truly, B. C. Girdley.'

"The check mentioned in the letter was paid by the Midland Bank on July 12th, 1920. While the fact is somewhat doubtful, we think it can be stated with sufficient certainty that Girdley did not in May, June or July, 1920, sell and deliver 50 head of the double half circle brand of cattle at $50 per head. The record shows no sale of the mortgaged cattle to any person other than the 62 head, until about August, 1920.

"On October 6, 1920, the Border National Bank received a letter from Girdley enclosing a renewal note for $14,000, and a check for $300 to cover interest and war tax, stating that on account of the cattle market the cattle should be held longer, and asking that the bank accept the renewal note. By renewals the indebtedness was extended by renewal notes to July 14, 1921. The above seems to us to cover all the facts material to the issues presented here, except some later referred to and applicable more particularly to issues under discussion.

"On the above facts as to the receipt, handling, sale, and deposits of the net proceeds of the sales of the cattle, pleaded by Campbell, Rosson, and Davis, they denied any notice or knowledge of the chattel mortgage held by the Border National Bank, and say the cattle were shipped to them in regular course of business at the Fort Worth market; that they sold said cattle on the open market at public sale to purchasers in the usual course of business; that none of said cattle were retained by them in their possession, and were never in their possession save and except as commission merchants in the pens of the Fort Worth Stockyards Company, and deny the conversion of said cattle. They plead in the alternative that if it should be held that the facts show a conversion by them, in that event, by cross-action, they pleaded over against the Midland National Bank.

"The Midland National Bank pleaded the facts substantially as above stated in reply to said cross-action of Campbell, Rosson, and Davis, and deny liability.

"The undisposed of issues as between the Border National Bank, Campbell, Rosson, and Davis and the Midland National Bank and some other defendants not necessary to state here, came to trial. Girdley having filed no answer, judgment by default was rendered in favor of the plaintiff bank as to him, foreclosing its lien on the cattle. The court also instructed a verdict in favor of the bank as to Jones. The court also, on motion, entered judgment in favor of the Midland National Bank as to the cross-action of Campbell, Rosson, and Davis. The court also instructed a verdict in favor of Campbell, Rosson, and Davis, and against the plaintiff bank. The Border National Bank appeals from the judgment in

favor of Campbell, Rosson, and Davis, and Campbell, Rosson, and Davis appeal from the judgment in favor of the Midland National Bank."

Upon appeal to the Court of Civil Appeals, the latter court affirmed the judgment of the district court after reforming it as follows:

"The plaintiff in error, however, is entitled to receive the gross proceeds from such sales and is not limited to the net proceeds, and to that extent the judgment must be reformed. The difference between the gross and net proceeds, and retained by the appellees, is $181.-23, for which amount judgment is here rendered for appellant and against appellees Campbell, Rosson and Davis."

The Court of Civil Appeals thereupon rendered judgment for last-named amount over against Girdley, and in favor of Campbell, Rosson, and Davis. See 248 S. W. 780.

This item of $181.23 just mentioned covered freight, yardage, feed, inspection, insurance, and commission for selling. These charges, it is admitted, were usual and customary and reasonable on the Fort Worth stockyards at that time.

The Border National Bank filed an application for writ of error. It was dismissed for want of jurisdiction in April, 1923, but granted in May, 1923, when the application of the Commission Company was granted.

[1] It is contended by the mortgagee bank that it is still entitled to a judgment against the Commission Company for the proceeds of the sale of the converted cattle. In that connection, it is urged that the evidence does not show that it had already received the proceeds of the sale of said cattle. In answering this contention, it is only necessary to say that the trial court and Court of Civil Appeals both found that this bank accepted this payment of $2,500, knowing at the time that it represented the proceeds of the sale of these very cattle. All the evidence clearly sustains this finding of fact. This money was accepted in July, 1920. For a long time thereafter, the bank continued to do business with Girdley, renewing his notes, etc. After accepting this money, knowing where it came from, the' bank cannot longer complain because of the sale of these cattle. This disposes of the application of the bank.

[2] In view of what we have said, and in view also of the fact that the Commission Company voluntarily surrendered all the proceeds of the sale, save and except the expenses above referred to, it is not necessary to pass upon any assignments in its application except the one with reference to aforesaid expense items.

We have already quoted *all* the Court of Civil Appeals said upon this question. The writ of error was granted by the Supreme Court on this very issue. We think the Court of Civil Appeals erred in this holding, and we shall now proceed to refer to some authorities which seem to sustain our view.

The case of Marse & Co. v. Flockinger, 189 S. W. 1017, involved a suit for damages for conversion of mortgaged cotton. The trial court allowed the purchasers of the mortgaged cotton credit for the items of cotton picking and rent. The Court of Civil Appeals at Austin, speaking through Judge Rice, held:

"We think the action of the court in allowing appellants credit for the items of cotton picking and rent was just and proper. We therefore overrule appellees' cross-assignments challenging the correctness of the judgment on this account."

The case of McDaniel v. Staples, 113 S. W. 596, was another for damages for conversion of mortgaged cotton. In that case, the Court of Civil Appeals at Texarkana, speaking through Judge Levy, said:

"The jury properly allowed his rent claimed and the $40 money and such other expenses connected with the gathering and preparing for market as would be authorized under the evidence."

The case of T. & N. O. Ry. Co. v. Patterson & Roberts, 192 S. W 585, was for damages for alleged conversion of a car of maize. The Court of Civil Appeals at Amarillo, speaking through Judge Boyce, held:

"The measure of damage for conversion would be the value of the grain at destination, less the legal transportation charges. Hutchinson on Carriers, § 1375; M., K. & T. Ry. Co. v. Rines, 37 Tex. Civ. App. 618, 84 S. W. 1092; Carter & Corey v. I. & G. N. Ry. Co., 93 S. W. 681. We say this for the information of the lower court on another trial, in the event the issue of conversion shall be again before the court, as the court seems to have applied a different rule on the former trial."

The Court of Civil Appeals at Fort Worth made a similar ruling in case of Railway Co. v. Rines, 37 Tex. Civ. App. 618, 84 S. W. 1092, involving suit for damages for conversion of a car of onions. The Court of Civil Appeals at San Antonio held the same way in the case of Carter & Corey v. Railway Co., 93 S. W. 681, where suit was for damages for conversion of a car of potatoes.

These various decisions of the Courts of Civil Appeals did not reach the Supreme Court because of the small amount involved, but we find no decision of our Supreme Court contrary to the rules there announced. None are cited in the briefs by the parties. We think these decisions of the Courts of Civil Appeals are correct, so far as applicable to the case at bar.

The cattle sold in the instant case were valuable as security only in so far as they could be converted into cash when the note matured. They were so converted and changed in this case. The mortgagee bank accepted the proceeds of the sale. It received the benefits of this conversion. It must assume its burdens. It must take the bitters

as well as the sweets arising out of this sale by the Commission Company. This is not a case where the mortgagee repudiated the sale and still sought recovery of the mortgaged cattle because of the fact that they had been sold without consent. On the other hand, it is a case where there was acquiescence in the sale and an acceptance of its benefits. Therefore, the mortgagee was not entitled to any more from this sale than could reasonably have been realized therefrom after paying the expenses usually incident to such a transaction. It is admitted that these items of expense were customary and reasonable, and that the cattle brought their fair market value. It would be unjust, under the facts here present, to deprive the Commission Company of these ordinary items of expense and remuneration for services performed.

Therefore we think the Court of Civil Appeals erred in reforming the judgment of the trial court as it did. We think the trial court rendered the proper judgment.

In view of what we have said, we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.