# FEBRUARY, 1936

W. W. OATS ET AL. V. DUBLIN NATIONAL BANK ET AL.

No. 6449.   Decided February 19, 1936.
(90 S. W., 2d Series, 824.)

*J. A. Johnson,* of Stephenville, and *Arthur R. Eidson,* of Hamilton, for plaintiffs in error.

If the Court of Civil Appeals draws a different conclusion from the facts from those already arrived at by the jury and the trial judge it may reverse the judgment of the lower court and remand the case for a new trial, but it cannot reverse

such judgment and render a final judgment of its own. Underwood v. Jones, 95 Texas, 121, 65 S. W., 480; Eastham v. Hunter, 98 Texas, 560, 86 S. W., 323; Ellis v. Brooks, 101 Texas, 591, 102 S. W., 94; Routh v. Caron, 64 Texas, 291; Thompson v. Kelley, 100 Texas, 536, 101 S. W., 1074.

*Bryan, Stone, Wade & Agerton,* of Fort Worth, *Chandler & Chandler, Chandler & Keith* and *Robt. L. Thompson,* all of Stephenville, for defendants in error.

The undisputed evidence shows that the mortgagee, Dublin National Bank, had impliedly consented for the mortgagor, R. H. Stephens to sell the calves on the condition that the proceeds or a portion of them be forwarded to the mortgagee bank. Of the fact the commission company had no knowledge and therefore the mortgage lien was waived as a matter of law. Rusk County Lumber Co. v. Meyer, 126 S. W., 317, error dismissed by the Supreme Court; Tucker v. Mann, 124 Geo., 1003, 53 S. E., 504; Gilliam v. Smither, 33 S. W., 984.

A mortgagor who sells mortgaged cattle with the consent of the mortgagee on condition, either express or implied, that the proceeds or a part thereof be applied on his indebtedness to the mortgagee, is the agent of the mortgagee in making the sale and in accounting for the proceeds. Farmers State Bank of Petersburg v. Anderson, 112 Neb., 413, 199 N. W., 728, 36 A. L. R., 1374; Bibb v. Allen, 149 U. S., 481, 37 L. Ed., 819; Seymour v. Standard Livestock Commission Co., 110 Neb., 185, 192 N. W., 398.

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

R. H. Stephens on October 21, 1929, executed to Dublin National Bank his promissory note for $5768.00, secured by chattel mortgage on a number of cattle. The note was twice renewed, the last renewal being in the sum of $5533.15, executed June 27, 1930, and due October 15, 1930. A new chattel mortgage was given to secure each renewal note and the three mortgages were promptly filed and registered in Hamilton County, where the cattle were situated. The original note represented money advanced by Dublin National Bank to R. H. Stephens to enable him to purchase the cattle. Stephens executed three chattel mortgages on cattle to secure his notes to Farmers National Bank, also of Dublin. These mortgages do not describe in detail the same cattle as those described in the mortgages given to Dublin National Bank, but they state that

they cover all live stock situated in Hamilton County owned by Stephens.

On January 8, 1930, the Breedlove Live Stock Commission Company received in Fort Worth fifty-six calves shipped to it by R. H. Stephens, and sold them the same day and remitted the proceeds, amounting to $2324.85, to Farmers National Bank at Dublin. The remittance was so made upon instructions from Stephens, who advised the commission company that Farmers National Bank had a mortgage on the calves. The bank deposited the remittance to the credit of Stephens, who paid $1368.00 of the same on his note to that bank. The sale of the calves was made with the consent of Farmers National Bank. They were part of the calves described in the mortgages given to Dublin National Bank.

W. W. and Bart Oats bought from Stephens, in September, 1930, for $2000.00, thirty-seven cows, thirty-seven calves, and one bull, being also part of the cattle covered by the mortgages to Dublin National Bank. Stephens told Bart Oats that Farmers National Bank had a mortgage on the cattle and Oats, before buying them, went to Farmers National Bank, and upon direction of its president and with the consent of Stephens, paid the purchase price of the cattle to that bank. The amount so paid was credited upon Stephens' note.

Defendant in error Dublin National Bank as plaintiff sought in this suit judgment against Stephens on his note, judgment against Stephens and all other parties for foreclosure of its lien upon the cattle covered by its mortgage and in the possession of W. W. and Bart Oats, judgment against Farmers National Bank and Breedlove Live Stock Commission Company for damages on account of conversion of the fifty-six calves, and judgment against Farmers National Bank and W. W. and Bart Oats for damages on account of conversion of the thirty-seven cows, thirty-seven calves and one bull.

In answer to special issues the jury found: that the calves sold through the commission company and the cattle sold to W. W. and Bart Oats were covered by the original mortgage given to Dublin National Bank; that none of the cattle so sold was covered by the mortgages given to Farmers National Bank; that Farmers National Bank through its cashier participated in the two sales; that Dublin National Bank did not consent to either sale; that Stephens was not acting as agent of Farmers National Bank in the sale of the cattle through the commission company; that the cattle sold to W. W. and Bart Oats were of the value of $2000.00; that the calves sold through the com-

mission company were of the value of $2333.00; that the cashier of Farmers National Bank stated to Bart Oats that it was agreeable to said bank for W. W. and Bart Oats to buy the cattle from Stephens, provided the consideration of $2000.00 was paid to said bank; that Oats was induced by such statement to pay the bank the consideration of $2000.00 for the cattle, and that the description of the cattle given in the original mortgage to Dublin National Bank was sufficient to identify the cattle.

The trial court rendered judgment as follows: in favor of Dublin National Bank against Stephens for $6492.28 on the note; against all defendants for foreclosure of chattel mortgage lien on sixty-three head of cattle which had been taken from the possession of W. W. and Bart Oats by sequestration and replevied by the plaintiff; judgment in favor of Dublin National Bank against Stephens, Farmers National Bank and W. W. and Bart Oats for $247.00, representing the value of thirteen of the calves sold to W. W. and Bart Oats and by them sold; judgment in favor of Dublin National Bank against Stephens, Farmers National Bank and Breedlove Live Stock Commission Company for $2333.00, the value of the cattle sold through the commission company; judgment in favor of Breedlove Live Stock Commission Company against Farmers National Bank for the sum of $2333.00, provided and if the commission company should be required to pay the judgment awarded Dublin National Bank against it; and judgment in favor of W. W. and Bart Oats against Farmers National Bank for $2000.00, provided they should pay to plaintiff bank the sum of $247.00.

On the appeal of Farmers National Bank and Breedlove Live Stock Commission Company, the Court of Civil Appeals concluded that the undisputed evidence showed that Dublin National Bank expressly consented to the sale of the cattle to W. W. and Bart Oats, and held that the purchasers acquired good title and that neither said purchasers nor Farmers National Bank could be held liable for a conversion of such cattle. Accordingly, it reversed the judgment which awarded Dublin National Bank $247.00 against Farmers National Bank on account of a conversion of the thirteen calves and rendered judgment that Dublin National Bank take nothing against Farmers National Bank on account of such alleged conversion, and reversed that portion of the judgment which awarded W. W. and Bart Oats $2000.00 against Farmers National Bank and rendered judgment that W. W. and Bart Oats take noth-

ing by their cross action against said bank. The Court of Civil Appeals held, with Chief Justice Hickman dissenting, that it was without power to correct the judgment against W. W. and Bart Oats in so far as it foreclosed a lien upon the cattle taken from them by sequestration and in so far as it awarded judgment against them for conversion of the thirteen calves, because they had not appealed. The Court of Civil Appeals also reversed that part of the judgment which decreed that Breedlove Live Stock Commission Company recover on its cross action against Farmers National Bank $2333.00, and rendered judgment that the commission company take nothing by its cross action against said bank. In other respects the judgment of the trial court was affirmed. 55 S. W. (2d) 567. Three separate applications for writs of error were filed by W. W. and Bart Oats, Breedlove Live Stock Commission Company and Farmers National Bank, and all were granted.

■ Dublin National Bank as plaintiff in the trial court elected to foreclose its lien upon the cattle bought by W. W. and Bart Oats that remained in their possession and to seek recovery of damages for the conversion of thirteen calves sold by W. W. and Bart Oats and for the calves sold through the commission company. In this there was no inconsistency. 9 Tex. Jur., pp. 174-175, sec. 72.

■ A mortgagee may maintain an action of trover on account of the conversion of the mortgaged property. Usually such action is against the mortgagor and the purchaser and they are jointly liable to the mortgagee. Anyone, however, who is instrumental in the disposition of the property in denial of the mortgagee's right, or who causes or induces such disposition of the property, may be held by the mortgagee for conversion. Robertson v. Hunt, 77 Texas, 321, 14 S. W., 68; Focke, Wilkens & Lange v. Blum, 82 Texas, 436, 443, 17 S. W., 770; Bowers v. Bryant-Link Co. (Com. App.), 15 S. W. (2d) 598; First National Bank of Lewisville v. Davis (Com. App.), 5 S. W. (2d) 753; Beaumont Rice Mills v. Dishman, 72 S. W. (2d) 365 (application for writ of error refused); Western Mortgage & Investment Co. v. Shelton, 8 Texas Civ. App., 550, 29 S. W., 494; Buffalo Pitts Company v. Stringfellow-Hume Hardware Company, 61 Texas Civ. App., 49, 129 S. W., 1161; Nunn v. Padgitt Bros., 161 S. W., 921; Hunter v. Abernathy, 188 S. W., 269; Smith v. Wall, 230 S. W., 759; 9 Tex. Jur., p. 148, sec. 58; 9 Tex. Jur., p. 175, sec. 72; 11 C. J., p. 630, sec. 342; 65 C. J., pp. 63-64, sec. 103.

It has been held that factors and commission merchants are not exempt from the operation of the broad rule that anyone who aids and assists in so disposing of mortgaged property as to defeat the mortgagee's interest therein is guilty of wrongful conversion. Hnter v. Abernathy, 188 S. W., 269, and authorities therein cited; Border National Bank v. Campbell & Rosson Live Stock Commission Company, 248 S. W., 780 (reversed on another point, 270 S. W., 539); 11 C. J., p. 632, sec. 343. If the mortgagee consents to the sale of the mortgaged property, the purchaser takes it free of the lien and the mortgagee can have neither foreclosure nor damages for conversion. Hogg v. Magnolia Petroleum Company (Com. App.), 267 S. W., 482; Campbell & Rosson Live Stock Commission Company v. Border National Bank (Com. App.), 270 S. W., 539; 9 Tex. Jur., p. 145, sec. 55; 11 C. J., pp. 624-625, sec. 339.

The jury by its verdict found the facts essential to foreclosure upon the cattle remaining in the possession of W. W. and Bart Oats, and to recovery against said defendants and Farmers National Bank for conversion of thirteen calves, and to recovery against Farmers National Bank and Breedlove Live Stock Commission Company for conversion of the fifty-six calves sold through the commission company. These facts were: Dublin National Bank's registered mortgage covering the cattle and securing its unpaid debt; participation by Farmers National Bank in both sales; and the absence of consent by Dublin National Bank to either of the sales. The undisputed evidence showed participation by W. W. and Bart Oats in the purchase of part of the cattle and in the disposition of thirteen calves, participation by the commission company in the sale of the fifty-six calves, and that both sales were made in disregard of the rights of Dublin National Bank.

■ A careful reading of the statement of facts convinces us that all of the jury's findings of fact above referred to are supported by evidence. Both Farmers National Bank and the commission company insist that the undisputed evidence shows consent by Dublin National Bank to the sale of the calves made through the commission company, but our opinion is that the Court of Civil Appeals correctly held that such consent was not established, as a matter of law, contrary to the findings of the jury. Both the jury and the Court of Civil Appeals found that Farmers National Bank participated in the sale of the fifty-six calves and the evidence, some of which is detailed in the opinion of the Court of Civil Appeals, supports their find-

ings. This participation was of a nature and extent sufficient to make Farmers National Bank a party to the conversion, under the authorities above cited. A junior mortgagee, who with constructive notice of the senior mortgage directs the mortgagor to sell the property by giving consent to the sale and who receives and appropriates all or a part of the proceeds of the sale in denial of the rights of the senior mortgagee, becomes jointly liable with the mortgagor for the conversion. Bank of Odenville v. Union State Bank, 212 Ala., 52, 101 So., 666; Henderson v. Foy, 96 Ala., 205, 11 So., 441; Lafeyth v. Emporia National Bank, 53 Kans., 51, 35 Pac., 805; First National Bank v. American State Bank, 73 Col., 254, 215 Pac., 473.

■ We cannot agree with the conclusion of the Court of Civil Appeals that the undisputed evidence showed express consent of Dublin National Bank to the sale of the cattle to W. W. and Bart Oats. That conclusion was based upon the testimony of E. W. Harris, president of Dublin National Bank, as to a telephone conversation in which he told Mr. James, cashier of a bank at Hamilton, that he would consent to Stephens' selling certain of the cattle at a named price to a Mr. Williams and a Mr. Oglesby at Hamilton, provided Stephens would bring the check for the cattle to Dublin National Bank. No connection whatever was shown between the proposed sale of part of the cattle to Oglesby and Williams, which was never made, and the sale made four or five days later of part of the cattle to W. W. and Bart Oats. The consent given by Harris to James was consent to the purchase which James was assisting Williams and Oglesby to make and it was conditioned, as James was advised, that a check be given for the purchase money and brought to Dublin National Bank. James testified that if the purchase had been made he would have sent the check to Dublin National Bank. Evidently Harris was willing to trust the cashier of the bank at Hamilton to see that the check was so made and transmitted that Dublin National Bank would receive the proceeds of the sale. The consent thus given was not consent that Stephens might sell the cattle to any purchaser free of the lien and was not consent to leave to Stephens the disposition of the proceeds of any sale of the cattle that he might make. A mortgagee, who gives to a prospective purchaser of the mortgaged property his consent to its sale and at the same time advises the prospective purchaser of the condition upon which the consent is given, does not thereby consent that the mortgagor may sell the property free of the lien to some other person who has no knowledge of the condition. Harris testi-

fied positively several times that neither he nor his bank ever gave to Stephens or any other person consent of the bank to sell any of the cattle covered by the mortgage, and that Stephens had no authority to sell the cattle without the consent of the bank.

■ As has been stated, the jury found in answer to a special issue that Dublin National Bank did not consent to the sale of the cattle to W. W. and Bart Oats. The evidence in the statement of facts bearing upon the question presented by this special issue would have warranted either an affirmative or a negative answer. This being true, the Court of Civil Appeals was without authority to substitute its finding upon the issue for that of the jury. Choate v. San Antonio & Aransas Pass Ry. Co., 91 Texas, 406, 44 S. W., 69; Post v. State, 106 Texas, 500, 171 S. W., 707. The action of the Court of Civil Appeals, however, in disapproving the jury's finding upon this material issue of fact was within its authority; was the finding of a fact which would defeat recovery; and therefore requires that the judgment of the trial court in so far as it rests upon this issue, as well as the judgment of the Court of Civil Appeals, be reversed. State v. Elza, 109 Texas, 256, 206 S. W., 342; Tweed v. Western Union Telegraph Co., 107 Texas, 247, 166 S. W., 696, 177 S. W., 957; Beck v. Texas Company, 105 Texas, 303, 312, 148 S. W., 295; Marshburn v. Stewart, 113 Texas, 507, 518, 260 S. W., 565.

■ The Court of Civil Appeals reversed that part of the trial court's judgment which gave Breedlove Live Stock Commission Company recovery on its cross action against Farmers National Bank in the event it should be required to pay the judgment awarded Dublin National Bank against it and Farmers National Bank on account of the conversion of the fifty-six calves. On first consideration the holding of the Court of Civil Appeals seems to be justified by the common law rule which denies indemnity or contribution to a tort-feasor. That rule, however, is subject to many exceptions and its operation has been confined within very narrow limits. 6 R. C. L., p. 1055, sec. 17, 13 C.J., p. 829, sec. 20; 10 Tex. Jur., p. 554, sec. 15; Cooley on Torts (3rd Ed.), vol. 1, p. 254, sec. 167. A statute of this state (Art. 2212, R. S., 1925) which permits a tort-feasor, in a proper proceeding, to enforce contribution is a departure from the rule. See Bradshaw v. Baylor University, 126 Texas, 99, 84 S. W. (2d) 703; 10 Tex. Jur., pp. 552-554, sec. 14. Aside from the statute, it is held in negligence cases

that where two persons are liable to another for tort the active wrongdoer should indemnify the one whose wrong is only passive. City of San Antonio v. Smith, 94 Texas, 266, 271, 59 S. W., 1109; East Texas Public Service Co. v. Johnson (Com. App.), 6 S. W. (2d) 344. In other cases the principal delinquent is often held responsible to the co-delinquent when under the facts the parties are not equally culpable. 10 Tex. Jur., pp. 554-555, sec. 15; 6 R. C. L., p. 1057-1058, sec. 18.

One of the recognized exceptions to the rule that there may be no contribution or indemnity between wrongdoers is that an agent, who in the performance of his duties for his principal incurs liability for an act not morally wrong, may have indemnity from the principal. Cooley on Torts (3rd Ed.), vol. 1, pp. 255-256, sec. 168; Culmer v. Wilson, 13 Utah, 129, 44 Pac., 833, 57 Am. St. Rep., 713, 718; Horrabin v. Des Moines, 198 Iowa, 549, 199 N. W., 988, 38 A. L. R., 554, 557. This exception is an application of the established rule that a principal is bound to indemnify his agent for loss resulting proximately from the good faith execution of the agency. 2 Tex. Jur., pp. 620-621, sec. 203; 14 R. C. L., p. 51, sec. 9; Bibb v. Allen, 149 U. S., 481, 37 L. Ed., 819, 826, 13 Sup. Ct., 950.

The jury's finding of participation by Farmers National Bank in the sale of the fifty-six calves and the undisputed evidence with respect to the acts and relation of the parties in the transaction placed the commission company in effect, if not in fact, in the position of agent for Farmers National Bank in making the sale and remitting the proceeds to it. The cashier of Farmers National Bank, believing it had a mortgage on the calves, discussed with Stephens the shipment and sale of the cattle, or of some of them, and authorized the sale, undoubtedly with the understanding that the proceeds would be remitted to the bank. Stephens shipped the calves to Breedlove Live Stock Commission Company and instructed it to sell them and remit the proceeds to Farmers National Bank. This the commission company promptly did, retaining only the usual commission. Thus Farmers National Bank and Stephens were the active participants in the disposition of the calves. The commission company made the sale for them and in accordance with their plan and direction, and Farmers National Bank received the proceeds of the sale. The commission company was merely the factor or instrumentality through which the calves were sold. In selling the calves the commission company acted for Stephens as well as for Farmers National Bank,

but the sale was primarily directed and controlled by, and made for the benefit of, the bank.

The conclusion that the relation between Farmers National Bank and the commission company was in principle and nature that of principal and agent appears in a measure to conflict with the jury's finding that Stephens was not acting as agent of Farmers National Bank in the sale of the calves, for Stephens, by shipping the calves to the commission company and directing that the proceeds be remitted to the bank, brought about the relation between the bank and the commission company. There was, however, no conflict or dispute in the evidence with respect to the acts of Stephens, Farmers National Bank and the commission company in the transaction, and the jury's finding that Stephens was not the agent of the bank was a conclusion of law from the undisputed facts rather than a fact finding. The question as to the commission company's right to be indemnified by Farmers National Bank is determined by the relation ultimately existing between the commission company and the bank and the acts of these two parties in connection with the sale, as shown by the undisputed facts, and not by the relation between Farmers National Bank and Stephens.

█ Live stock commission merchants are regulated by statute (Arts. 1281-1287, R. S., 1925). They must sell live stock without delay while they are in good condition and to save undue expense for feeding. They are required to remit the proceeds promptly. It is a strict rule which imposes upon them liability for conversion to a mortgagee on account of a mortgage filed in a remote county and of which they have no actual knowledge. Their business is in its nature one of agency; and as between them and those for whom they act in making sales and to whom they remit the proceeds of the sales, they should have, provided they act in good faith, the same right to indemnity that ordinarily is given to agents against their principals. The trial court's judgment awarding indemnity to the commission company against Farmers National Bank was, under the facts found by the jury and established by the uncontroverted evidence, correct.

Since all of that part of the trial court's judgment which was based upon the jury's finding that Dublin National Bank did not consent to the sale made to W. W. and Bart Oats must be reversed, we need not determine whether the majority of the Court of Civil Appeals was correct in holding that it could

grant no relief to W. W. and Bart Oats, who did not appeal to that court.

In view of another trial, it should be added that in our opinion judgment was properly rendered by the district court in favor of W. W. and Bart Oats on their cross action against Farmers National Bank, after the judgment of foreclosure upon the sequestered cattle and following the jury's answers to the special issues with reference to their purchase of the cattle. The disposition made by the Court of Civil Appeals of other questions presented and not discussed herein is approved.

■ The judgment of the Court of Civil Appeals is reversed. The judgment of the district court, in so far as it foreclosed in favor of Dublin National Bank a lien upon the sequestered cattle and awarded Dublin National Bank judgment for $247.00 against W. W. and Bart Oats, R. H. Stephens, and Farmers National Bank and awarded W. W. and Bart Oats judgment for $2000.00 on their cross action against Farmers National Bank, is reversed, and the cause is to the extent only of such reversal remanded to the district court for new trial. In all other respects the judgment of the district court is affirmed. Costs of district court are taxed as they were taxed by said court. Costs of the appeal to the Court of Civil Appeals are taxed one-third against Dublin National Bank, one-third against Farmers National Bank, and one-third against Breedlove Live Stock Commission Company. Costs in the Supreme Court are taxed against Farmers National Bank.

Opinion adopted by the Supreme Court February 19, 1936.