RADCLIFF FINANCE CORPORATION, Appellant,

v.

The INDUSTRIAL STATE BANK OF HOUSTON, Texas, Appellee.

No. 5096.

Court of Civil Appeals of Texas.

Beaumont.

March 22, 1956.

Harold A. Crawford, Houston, for appellant.

Eastham & Williams, Houston, for appellee.

ANDERSON, Justice.

Appellee, The Industrial State Bank of Houston, Texas, was plaintiff in the trial court and will be so referred to here. The appellant, Radcliff Finance Corporation, intervened in the suit and will be referred to as intervener. Plaintiff filed suit June 13, 1953, against one Thomas O. Moody to recover the balance due on a note Moody had executed and delivered to it July 29, 1952, and to foreclose a chattel mortgage lien on an automobile which was then in possession of the defendant, the asserted lien having been given by Moody to secure payment of the note. Contemporaneously with filing suit, plaintiff also applied for and secured a writ of sequestration for the automobile in Moody's possession; and said writ was executed the same date, June 13, 1953, by the sheriff of Harris County, by taking into his possession the automobile involved. Neither the plaintiff nor the defendant replevied the automobile, and it remained in possession of the sheriff up to the time of trial. On December 14, 1953, some seven months after the writ of sequestration was levied, the intervener, claiming to hold a superior lien on the automobile, demanded of plaintiff possession of it. Plaintiff thereupon requested intervener to display evidence of its claimed superior lien. The request was not complied with and plaintiff took no steps toward having the automobile delivered to intervener. The latter, with permission of the trial court, then intervened in this suit February 2, 1954. It represented itself to be the holder of a promissory note, made in its favor by one Fred Worsham June 2, 1952, and of a chattel mortgage lien on the automobile, given by Worsham to secure payment of the note. Worsham was not a party to the suit, and intervener did not undertake to recover on the Worsham note nor to foreclose the Worsham mortgage. Instead, he sought to recover from plaintiff the value of the automobile, upon the theory that the levy of the writ of sequestration June 13, 1953, was an act of conversion for which plaintiff was liable. The case proceeded to trial before a jury, but, at the conclusion of the evidence, the trial court, on plaintiff's motion, withdrew the case from the jury and rendered judgment in favor of plaintiff against defendant Thomas for the balance due on the note sued upon and for foreclosure of its lien on the automobile involved, and decreed that intervener take nothing by its plea in intervention. Only the intervener has appealed.

The parties are in substantial accord regarding the history of their conflicting claims.

The automobile involved is a 1951 Plymouth Fordor Sedan, Motor No. P23–272329, which was originally owned by Mrs. Ira Levy. On or about April 9, 1952, having been theretofore damaged, it was sold, as salvage, to Monte Hasha, an automobile dealer. The latter repaired it, using all new parts, and subsequently sold it to Fred Wor-

sham, an automobile dealer who was doing business in the name of Worsham Motor Sales. Radcliff Finance Corporation, the intervener, advanced Worsham the sum of $1,301.30 with which to pay Hasha for the car. This occurred June 2, 1952. As a part of the transaction, intervener received from Worsham the latter's note for $1,301.30; a chattel mortgage on the automobile; the original certificate of title, duly endorsed from Mrs. Levy to Monte Hasha and from the latter to Worsham Motor Sales; and an application for a corrected certificate of title, same to reflect Worsham Motor Sales as owner of the automobile and Radcliff Finance Corporation as holder of a first lien on it to secure payment of the amount above stated. The instruments were all kept in the possession of Radcliff Finance Corporation from June 2, 1952, until January 8, 1954, when they were filed with the Tax Assessor of Harris County. They were then forwarded by the Tax Assessor to the Texas Highway Department, Title Division, where they have since remained.

The note given by Worsham to intervener was payable on demand, but, pursuant to a general working agreement between the parties, was understood to be payable when the automobile should be sold by Worsham.

On July 29, 1952, at which time the aforesaid papers were in the possession of Radcliff Finance Corporation, Fred Worsham, in the name of Worsham Motor Sales, contracted to sell the automobile to Thomas O. Moody, was paid in cash the full consideration agreed upon, and delivered the automobile into Moody's possession. However, he did not pay Radcliff Finance Corporation any of the money so received by him, nor did he procure and deliver to Moody the correct certificate of title to the automobile. Instead, when the certificate of title was demanded, he delivered to Moody and to plaintiff bank, who loaned Moody money with which to pay for the car, a certificate of title to a 1951 Plymouth, Motor No. P23-50187, which had apparently theretofore been junked. This certificate was accepted and was not at that time checked by either Moody or the bank against the motor number of the automobile Moody received.

Moody executed and delivered to the bank a chattel mortgage conforming to the certificate of title he had received, and signed an application for a corrected certificate, showing himself as owner and the bank as holder of a first lien to secure payment of $1,384.-20. The certificate and application for corrected certificate were duly filed with the Tax Assessor of Harris County, forwarded to the Highway Department, and on August 19, 1952, a corrected certificate was issued to Moody as owner and showing the bank's lien. As a consequence, according to the corrected certificate of title and the bank's mortgage, the bank acquired a lien on a 1951 Plymouth, Motor No. P23-50187, and Moody became the owner of such car, subject to the bank's lien, when, in reality, the car that was delivered to Moody by Worsham and was understood and intended by both Moody and the bank to be the car with reference to which all parties were contracting was a 1951 Plymouth, Motor No. P23-272324, the title papers to which were held by interveners. The discrepancy was not discovered by either Moody or the bank until long after they had contracted between themselves and with Worsham. When it was discovered, Moody declined to make further payments, and this suit followed.

In both the writ of sequestration and the judgment foreclosing plaintiff's mortgage lien, the automobile was described by its correct motor number, P23-272329.

Appellant's brief is largely devoted to a discussion of the Certificate of Title Act and of the validity and priority of the liens asserted by appellant and the bank. However, we do not find it necessary to determine with certainty the nature of the interest Moody acquired in the automobile or to pass upon the question of the priority of the asserted liens, and we forego doing so. Appellant concedes that, under the holding in Hicksbaugh Lumber Co. v. Fidelity & Casualty Co., Tex.Civ.App., 177 S.W.2d 802, Moody acquired some interest in the automobile, but contends that the interest so acquired was only the equity over and above the lien that appellant, itself, asserts. Whatever the nature of the title or interest, it was subject to be, and was, mortgaged to

the bank. Appellant, as already stated, did not seek foreclosure of its asserted lien, but sought to recover only upon the theory of conversion. And the conversion is alleged to have resulted from the fact that on June 13, 1953, while acting under and pursuant to a writ of sequestration which the bank had caused to be issued in its suit against Moody, the sheriff of Harris County took the automobile into his possession and custody, where it remained until the case was tried. Assuming, therefore, that appellant held the superior lien on the automobile, there is yet the question of whether, by merely procuring the issuance of the writ of sequestration and causing it to be executed, there being no contention that it acted wrongfully or illegally in so doing, the bank, as holder of the junior lien, became liable to appellant, as holder of the senior lien, for conversion. And we answer the question in the negative.

■ A mortgagee may, in proper circumstances, maintain suit against a third party for conversion of mortgaged property. Oats v. Dublin Nat. Bank, Tex.Com.App., 127 Tex. 2, 90 S.W.2d 824, opinion adopted; Crawford Undertaking Co. v. Herman Siegel, Inc., Tex.Civ.App., 230 S.W.2d 590; General Motors Acceptance Corporation v. Wilcox, Tex.Civ.App., 95 S.W.2d 1368. However, neither of the cases just cited, nor any other to which our attention has been directed and in which a conversion was held to have resulted, is in point on the facts here involved. We think the present case is ruled by such cases as Skaer v. First Nat. Bank of Paris, Tex.Civ.App., 293 S.W. 228, error refused; Baldwin Motor Co. v. De Ford, Tex.Civ.App., 282 S.W. 832; and Callihan v. Fort Worth Well Machinery & Supply Co., Tex.Civ.App., 88 S.W.2d 1057, 1061. Writs of attachment were involved in those cases, but the principle is the same.

In the Skaer case—a case in which the bank had caused property that was mortgaged to another to be attached and sold and had applied the proceeds of the sale to its own use, and in which the mortgagee was claiming that the levy of the bank's writ of attachment constituted a conversion of the mortgaged property—the court had quoted

Article 3797, Rev.Civ.Stat. of 1925, which was the same as the present Rule 643, T.R. C.P., to wit:

"Goods and chattels pledged, assigned or mortgaged as security for any debt or contract, may be levied upon and sold on execution against the person making the pledge, assignment or mortgage subject thereto; and the purchaser shall be entitled to the possession when it is held by the pledgee, assignee or mortgagee, on complying with the conditions of the pledge, assignment or mortgage."

The court then said [293 S.W. 229]:

"To hold that the appellee, in seizing and selling the property under the writ of attachment, committed a legal wrong, or trespass, which might constitute a distinct cause of action, would render the statute previously quoted nugatory. The fact that this proceeding was consummated without the knowledge or consent of the appellant, the mortgagee, is of no importance, since it might have been done over his protest. The personal liability of the attaching creditor, or purchaser under execution, does not rest upon the commission of a legal wrong in seizing or purchasing the property, but upon the fact that he owned and had possession, or did not hold the property subject to the conditions of the mortgage."

In the Baldwin Motor Co. case it was said, 282 S.W. 833:

"The title and right of possession of the automobile in question were both in R. A. Johnson. Appellant had a lien on said car to secure its debt, but had neither title nor right of possession. Johnson had the right to sell said car subject to appellant's mortgage, and Russell DeFord had the right to attach said car, to foreclose his attachment and sell same, or to sell same under execution, and in such event, appellant's chattel mortgage being duly filed, appellant could suffer no injury and could have no ground of complaint. Article 3744, Vernon's Sayles' Civil Statutes; Wilkerson v. Stasny & Holub, Tex.Civ.App., 183 S.W. 1191; Briggs v. Briggs, Tex.Civ.App., 227 S.W. 511. There is no contention that the attach-

ment was wrongfully· sued out, or that it was wrongfully levied, except in that, as contended by appellant, it was levied upon mortgaged property, but, as above stated, this was permissible, and its being. so levied afforded no grounds for complaint."

■ In causing the writ of sequestration to be issued and levied in the case at bar the bank was merely pursuing a remedy for the preservation and protection of its security that was expressly accorded it by statute. Article 6840, Vernon's Texas Civil Statutes. No contention is made that the writ was wrongfully sued out, or that it was wrongfully levied. The automobile was retained in the custody of the sheriff and was never delivered into the possession of the bank. We think no conversion was shown. "Being a conservatory act, sequestration does not affect the question of title to the property involved. Possession under the writ, as to the suit and the parties thereto is legal; and. during the pendency of the levy the property remains in the custody of the law." 38 Tex.Jur. 165, Sequestration, Sec. 6; Fowler v. Stonum, 6 Tex. 60, 72.

On the basis of the foregoing, appellant's points one and two are overruled.

■ Appellant's. third and last point complains that the trial court erred in rendering judgment against it and in reciting in the judgment that the judgment was granted in response to the motion of plaintiff therefor, "when in fact plaintiff's motion did not request any judgment or relief as against said Radcliff Finance Corporation as Intervenor." The point is without merit and is overruled. The judgment shows that the case was withdrawn from the jury and that such judgment was rendered by the court. This was permissible in the circumstances, even without a motion therefor. McDonald's Texas Civil Practice, Vol. 3, pp. 1025 and 1029; Marlin Associates v. Trinity Universal Ins. Co., Tex.Civ.App., 226 S.W.2d 190, 193, and the cases there cited.

No error appearing, the judgment of the trial court is affirmed.