## HOUSTON COUNTY TIMBER CO. v. ARNOLD BROS. (No. 9104.)

Court of Civil Appeals of Texas. Galveston.
Feb. 2, 1928.

Rehearing Denied March 1, 1928.

1. Trespass ⬯46(1)—Evidence held to warrant finding that defendants did not aid or assist in cutting and removal of timber from plaintiff's land.

In action for recovery of value of timber cut and removed from plaintiff's land, evidence *held* to warrant finding that defendants did not aid, abet, assist, or advise commission of the trespass.

2. Trespass ⬯46(1)—Evidence held not to show that one assisting in removing timber from plaintiff's land was acting as defendant's agent.

In action for value of timber cut and removed from plaintiff's land, evidence *held* not to show that one who assisted in cutting and removing timber was acting as agent of defendants.

Appeal from District Court, Houston County; Ben F. Dent, Judge.

Action by the Houston County Timber Company against Arnold Bros. and another. From the judgment in favor of the named defendants, plaintiff appeals. Affirmed.

Vinson, Elkins, Sweeton & Weems, of Houston, for appellant.

Earle P. Adams, of Crockett, for appellees.

PLEASANTS, C. J. This suit was brought by appellant against J. Kimbro and appellees Arnold Bros., a mercantile firm composed of J. Curtis Arnold and Leonard H. Arnold, to recover the sum of $2,150, the value of lumber alleged to have been manufactured out of timber willfully, knowingly, fraudulently, and unlawfully cut and taken by the defendants from land belonging to appellant and converted to their own use and benefit.

The petition alleges in the alternative that, if appellees did not cut and remove the timber, it was cut by the defendant Kimbro and manufactured into lumber and that appellees purchased the lumber from Kimbro in bad faith and converted it to their own use in fraud of plaintiff's rights, of which they had full knowledge. The appellees answered by general demurrer and general denial.

The jury in the court below, in response to special issues submitted by the court, found that neither appellees, their agents, or employees cut or removed any timber from appellant's land; that 45,000 feet of standing timber of the value of $3 per thousand feet was cut and removed from appellant's land; that 38,000 feet of timber worth $16.50 per thousand feet was manufactured from the timber taken from appellant's land; that appellees did not purchase this lumber from Kimbro.

Upon the return of this verdict, the court rendered judgment in favor of appellant against the defendant Kimbro for the sum of $627, the value of the lumber, and in favor of the appellees, that appellant take nothing against them.

Only two propositions are presented in appellant's brief. These propositions, which are presented and discussed together in the brief, are as follows:

"(1) All persons who aid, abet, assist, advise, or in any other manner contribute to the commission of a trespass, or, after the same has been committed for their benefit, assent to it, are responsible as principals and liable to the extent of the injury done.

"(2) The undisputed evidence showing that R. B. Ashe in assisting J. Kimbro, in cutting, removing, and manufacturing appellant's timber into lumber, was acting as an agent of appellees, and, the undisputed evidence further showing that the said Ashe was a trespasser, appellees were liable to appellant as principals to the extent of the injury done."

The assignments upon which the first proposition is rested complain of the jury's finding that appellees did not cut or remove any timber from appellant's land, on the ground that the undisputed evidence shows that appellees and the defendant Kimbro were engaged in a joint enterprise in the operation of the mill which sawed the timber that was cut and removed from appellant's land; that they actively contributed to the commission of the trespass by Kimbro; and that Kimbro and Ashe, who assisted him in the procurement of the timber and the operation of the mill, cut and removed the timber from appellant's land and manufactured it into lumber for the mutual benefit of Kimbro and appellees, who received financial benefit therefrom.

The assignment supporting the second proposition complains of the finding of the jury acquitting appellees of participation in the trespass upon appellant's land, on the ground that the undisputed evidence shows that R. B. Ashe, who assisted Kimbro in cutting and removing and manufacturing the timber into lumber, did so as an agent of appellees.

Waiving the irregularity in the manner of presenting the questions, we cannot say that the verdict of the jury is contrary to the undisputed evidence. The only question presented by the propositions and assignments is whether the undisputed evidence sustains the fact conclusions stated in the assignments.

The evidence shows that, some time prior to the trespass upon appellant's land, the defendant Kimbro and Robert Ashe owned and operated a sawmill near the city of Crockett, at which place appellees were engaged as partners in the mercantile business.

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Kimbro and Ashe bought merchandise from Arnold Bros. on credit, and after the lumber business had gone into a slump, Arnold Bros. extended further credit to them until the indebtedness reached a considerable amount. During the time the indebtedness was growing the mill had been removed to two or three different locations. It was finally, in the early part of 1925, moved on the Curry place, where it was situated when the timber involved in this suit was cut. Prior to that time, on at least one occasion, Arnold Bros. had purchased growing timber for Kimbro and Ashe, which was cut by them with this mill. They also were furnishing a large portion of the supplies needed to operate the mill, and after it was removed to the Curry place, they furnished the money used to pay the labor pay roll of the mill. The mill had been owned and operated by Kimbro and Ashe, but after the indebtedness to Arnold Bros. had increased to a considerable amount, Ashe claimed to have sold out his interest in the mill to Kimbro, who, he said, agreed to pay the Arnold Bros.' account. At that time Ashe left the mill, and so notified Arnold. Arnold Bros. received, in part payment for the supplies furnished, the proceeds from the sale of some of the lumber cut by the mill while located on the Curry place; but they did not hold a mortgage on the mill, nor on the lumber, nor did they have a written contract of any kind with Kimbro and Ashe.

After Ashe left the mill, L. H. Arnold, a member of the firm of Arnold Bros., talked to him and persuaded him to return to the mill and help Kimbro pull it out of the hole so as to pay the Arnold Bros.' account. He agreed to pay Ashe $25 per week, and it was charged to Kimbro's mill account, as all other labor bills were charged. Ashe returned to the mill and worked with Kimbro several months, and it was during this time the timber was cut.

The timber was cut from about 5 acres of land belonging to plaintiff, and which was adjacent to a 60-acre tract owned by Mr. Curry, and on which the mill was located. This timber had been left standing there for Mr. Curry many years before, to replace timber cut from his land by Houston County Timber Company's grantor, but Mr. Curry had relinquished his claim to this timber, and did not sell it to Kimbro.

The timber on the Curry 60-acre tract of land, on which the mill was operated, was bought by appellees for Kimbro and Ashe at their request, and appellees furnished supplies for the mill and the money to pay the labor employed in its operation. Under their verbal agreement with Kimbro the proceeds of the sale of lumber manufactured by the mill were to be applied to the reimbursement of appellees for the moneys expended by them in purchasing the timber and taking care of the pay roll, in payment for supplies furnished by appellees, and in payment

of pre-existing indebtedness to appellees. Kimbro also verbally agreed to consult appellees as to the price for which the lumber was to be sold, and to keep them informed as to whom it was sold.

Some time after they began operating the mill on the Curry place, Kimbro and Ashe cut the timber from 5 acres of appellant's land adjoining the Curry tract, out of which, the jury found, 38,000 feet of lumber was made which was worth $16.60 per thousand feet.

When an agent of appellant discovered this trespass he went to appellee L. H. Arnold, who seems to have represented his firm in all of these transactions with Kimbro, and complained of the trespass. Mr. Arnold testified that he told this agent that he had nothing to do with it and that he (the agent) should see Mr. Kimbro about it. Mr. Arnold also testified, in substance, that he did induce Ashe to return to the mill and help Kimbro work out their joint indebtedness to him and told Ashe that he would furnish the money to the mill to pay him $25 a week. He further testified that this amount was charged to the mill to be paid back to him like the other sums furnished by him to pay the laborers.

[1] We cannot, under the propositions and assignments in the brief, consider the question of whether the verdict of the jury is so against the great weight and preponderance of the evidence as to authorize this court to hold that it is clearly wrong and should be set aside and a new trial ordered. The only question presented is whether there is any evidence from which the jury could have reasonably found that appellees did not aid, abet, assist, or advise the commission of the trespass.

We think it clear that the evidence above set out is sufficient to sustain the finding that appellees did not own the mill, nor direct or control its operation or the sale of its products, and had no interest in the business of the mill, other than that of a creditor assisting its debtor to discharge his obligation, and looking to the proceeds from the sale of the mill products for reimbursement of the money due them by the owners and operators of the mill. Such relationship did not impose liability upon appellees for the wrongful acts of Kimbro and Ashe in cutting, removing, manufacturing, and selling appellant's timber, nor does such liability arise from the failure of appellees to prevent Kimbro and Ashe from continuing such trespass. Arnold testified that he told appellant's agent, who informed him of the trespass, that he had nothing to do with the matter and that the agent should see Kimbro about it. It is not shown that appellees had any further knowledge of the trespass or its continuance, or that they bought any of the lumber manufactured from appellant's timber, or received the proceeds of the sale of such lumber.

There is in fact no allegation in the petition that appellee received the proceeds of the sale of lumber manufactured from appellant's timber, and that ground of liability is not supported by either pleading or evidence.

[2] Upon the testimony of Mr. Arnold before stated as to the agreement under which Ashe returned to his work at the mill, Ashe was not the agent or employee of appellees. He went back to the mill to assist Kimbro in working out their joint indebtedness to appellees, and the fact that appellees agreed to furnish funds for the operation of the mill sufficient to enable him to draw $25 per week for his labor did not place him in a different relation to appellees from that of the other laborers for whose weekly pay appellees furnished the money. All the money furnished by appellees was charged to the mill, and Ashe and the other laborers were employees of the mill and not agents or employees of appellees.

We do not think either of appellant's propositions can be sustained. It follows that the judgment should be affirmed, and it has been so ordered.

Affirmed.