## HOUSTON TRANSIT CO. v. GOLDSTON.
### No. 12041.

Court of Civil Appeals of Texas. Galveston.
Jan. 27, 1949.

Rehearing Denied Feb. 17, 1949.

Raymond L. McDermott, of Houston (Baker, Botts, Andrews & Parish, of Houston, of counsel), for appellant.

Chilton Bryan and S. G. Kolius, both of Houston, for appellee.

CODY, Justice.

This was an action by appellee against appellant to recover $336.63, as the amount of damages to his automobile resulting from a collision with one of appellant's buses on South Main Street in Houston on October 26, 1945. The negligence of appellant's bus driver was alleged by appellee to be the cause of his damages. Appellant answered with a plea of general denial; that the proximate cause of the damage was a contributory negligence of appellee's wife who was driving the automobile at the time; and pled an unavoidable accident.

At the conclusion of all of the evidence, appellant moved for an instructed verdict. It also objected and excepted to the court's charge in certain respects. The court submitted the case to the jury upon forty-five Special Issues and rendered judgment on the answers thereto for appellee in the sum of $336.63, together with interest and costs. Appellant seasonably moved for a judgment notwithstanding the verdict and to disregard certain jury findings.

Prior to calling the case up for trial, appellee presented a motion to the judge to instruct appellant's counsel not to bring out in any way before the jury that appellee's automobile was covered by collision insurance or that the insurance carrier, the National Union Fire Insurance Company, under a "loan receipt" transaction, had lent appellee the amount of damages sought to be recovered in this suit, less $50 deductible.

After the court had indicated an intention to grant appellee's motion, appellant's counsel notified him that in their opinion the "loan receipt" transaction was a mere subterfuge by which the insurance company had paid the loss insured against by its policy and that consequently the insurance company was the real party at interest and that appellee was a mere nominal party and that appellant had the fundamental right to learn whether or not any of the jurors had a pecuniary interest in the outcome of the suit or a bias in favor of the insurance company and that in order to determine same, appellant's counsel con-

ceived it to be the right of appellant, in order to know how to exercise its challenges for cause or its peremptory challenges, to ask the jury whether or not any of them had ever been employed by the National Union Fire Insurance Company or whether or not any of the jurors owned any stocks, bonds or securities thereof or whether or not any of the jurors had ever taken out any policies of insurance with said company. In that connection, appellant's counsel submitted for the court's inspection, these proposed questions with reference to the National Union Fire Insurance Company, drafted so as not to intimate whether the insurance company was interested in the prosecution or defense of the suit or in any way interested in the outcome thereof.

The court granted appellee's motion and instructed appellant's counsel not to ask the jury the proposed questions. Upon voir dire examination this ruling was again repeated and appellant has fully reserved its objections to the court's action. An additional statement will be made when we discuss appellant's point I, which complains of the court's action on said motion.

Appellant predicates its appeal on three points, which present that the court erred:

I. In instructing appellant's counsel not to question the jury panel on voir dire examination as to any association, employment or financial interest with the real party in interest, the insurance company.

II. In refusing to submit appellant's Special Issues, "A", "B" and "C", as to whether, at the time of and immediately prior to the collision, the driver of appellee's automobile was straddling two traffic lanes, and whether such straddling, if any, was negligence, and a probable cause.

III. In submitting Special Issue No. 22, which inquired as to the reasonable cash value of appellee's automobile immediately after the collision; and in that connection further erred in refusing appellant's motion to disregard the jury's answer thereto, and render judgment notwithstanding the verdict; and that the court further erred in rendering a judgment based upon the jury's answer to said Special Issue.

We overrule appellant's point I.

Under this point appellant contends that the evidence produced before the court at the hearing on the motion established, as a matter of law, that the National Union Fire Insurance Company had paid appellee his loss covered by the insurance policy, less $50 deductible, and that consequently, as a matter of law, the insurance company became subrogated to appellee's interest, and the real owner thereof, and that it follows that appellant has the statutory right to learn whether the jurors, who were selected to try the case, had any direct or indirect financial interest in the outcome of the case or any bias with respect to the real party at interest and it is appellant's strenuous contention that the questions which it desired to submit in no way informed the jury that there was any insurance connected with the collision and specifically that there was no information of any coverage by said insurance company of the appellee.

We have had some difficulty in determining from the statement of facts whether the hearing on the motion was formally conducted and whether all of the evidence which was there made available to the court was made a part of the statement of facts. The certificate to the statement of facts is the regular certificate and is not broad enough to indicate that the evidence on the motion was copied into the statement of facts, but it is quite evident from reading the statement of facts that some of the evidence received on the motion was placed therein and that the proceeding was at least in part reflected by the statement of facts. It is quite clear from the statement of facts that a letter was written to appellant by appellee's counsel on April 8, 1946, and the letter in substance notified appellant that the aforesaid insurance company had by a "loan receipt" transaction transferred, in connection with said accident, the sum of $311.63 to appellee. It is not made to appear, however, whether or not the policy of insurance was introduced upon the hearing of said motion or whether or not the "loan receipt" was introduced into evidence. Whether introduced or not, these appear to have been made available to the court and counsel, but they have not been copied into the statement of facts. Appellant has no bill of exceptions which brings forward these instruments and complains of the court's failure to admit them as establishing the transaction which appellant claims subrogated the insurance company into the shoes of appellee and made the insurance company the true party at interest. In their briefs the parties on both sides treated as an unquestioned fact that the insurance company had issued a policy of insurance to appellee which covered the accident and had thereafter by a "loan receipt" transferred money to appellee and we must therefore assume, since appellee raised no point on this, that the court had available to it these two instruments.

However, the absence from the statement of facts of the "loan receipt" and of the policy of insurance keeps this court in darkness as to exactly what the terms of these two instruments were.

In Phillips v. Clifton Mfg. Co., 204 S.C. 496, 30 S.E.2d 146, 147, 157 A.L.R. 1255, the Supreme Court of South Carolina said: "Agreements of the nature of the 'Loan Receipt' above set out have been a common practice in business for many years, and appears to have originated in connection with losses paid under marine policies, and also in various forms of inland marine insurance losses and finally came into general usage under fire insurance contracts, and under automobile policies". From the facts that were before the Supreme Court of the United States in Luckenbach v. W. J. McCahan Suger Refining Co., 248 U.S. 139, 39 S.Ct. 53, 55, 63 L.Ed. 170, 1 A.L.R. 1522, it would appear that common carriers had perfected a form of an agreement with shippers which it would appear are enforced, at least in some jurisdictions, which have the practical effect of depriving the insurance carrier of subrogation in instances where the insurance was paid before the shipper had recovered judgment against the carrier on account of the loss insured against. Without repeating the reasoning of the court to the effect that the right of insurance companies (under the general law, unaffected by contracts of

parties) to recover on claims on which they had paid losses, was taken into account by actuaries, and the effect of the right of insurance companies to subrogation was to lower insurance rates, the court said: "Whether the transfer of money or other thing shall operate as a payment, is ordinarily a matter which is determined by the intention of the parties to the transaction. * * * "

 While the policy of insurance is not shown in the record before us, and we are unable to say if it provides that the insurance company shall not be obliged to pay unless or until it has been determined whether the wrongdoer causing the loss is liable, it is clear that the purpose of "loan receipts" is to provide that an insurer shall not, with respect to subrogation, be put in a worse position in cases where it promptly transfers to the insured the amount of his loss than if it had awaited the fixing of the wrongdoer's liability. Such transfers of money to the insured, by way of a "loan receipt", effects the same result as a payment. But in the absence of any fraudulent purpose, the insurer and the insured may provide that the transfer of the money is a mere loan to be repaid only out of the proceeds of a recovery from the wrongdoer. Here the appellant is a stranger to the insurance policy and to the "loan receipt", and brings forward no substantial reason why the intention of the parties to the "loan receipt" should be frustrated by the courts. We by no means hold that, in the absence of a "loan receipt" transaction, the appellant would have been entitled to treat the insurance company here as the real party at interest for the purpose of asking the jury the proposed questions. But we do hold that a "loan receipt" transaction is lawful, and effects a lawful purpose, and that a transfer of money under a "loan receipt" cannot be used as a basis for claiming that the insurer that has satisfied a loss must be taken as the real party at interest to the extent that appellant here insists. We hold that the court did not err in refusing to permit appellant to ask its proposed questions to the jury panel. Citation of authority, to the effect that it is immaterial in a suit to recover damages whether a party was covered with insur-

ance, is not required, but see Hudson Underwriters Agency, etc. v. Ablon, Tex.Civ.App., 203 S.W.2d 584.

We also overrule appellant's point II.

Appellant's specially requested Special Issue "A" reads:

"Do you find from a preponderance of the evidence that at the time and immediately prior to the collision between the bus and the automobile being driven by Mrs. Ada Goldston that Mrs. Ada Goldston was driving the automobile in such manner that the automobile was straddling two traffic lanes on South Main Street?" Appellant's Special Issues B and C inquired if such driving was negligence, and if same was a proximate cause.

 The evidence did not establish as a matter of law that Mrs. Goldston was driving the automobile so as to straddle two traffic lanes, and it would have been error for the court to have submitted an issue which assumed as true a disputed fact. See Bradshaw v. McDonald, Tex.Sup., 216 S.W.2d 972. The matter was amply covered by a proper issue which was submitted.

By its third point, appellant complains that the court erred in submitting Special Issue No. 22, and in overruling appellant's motion to disregard the jury's answer thereto, and render judgment for appellant non obstante veredicto. Said special issue, and the answer thereto is,

"From a preponderance of the evidence, what do you find to be a reasonable cash value of plaintiff's automobile immediately after the collision in question, in its damaged condition, in Houston, Harris County, Texas?

"Give your answer in Dollars and Cents". To which the jury answered $600.00."

Special Issue No. 21, as answered by the jury, was that the reasonable cash value of the automobile just prior to the collision was $1250.00. The appellee had sued for but $336.63, and the court accordingly rendered judgment for appellee for that sum.

Special Issue No. 22 was among the Special Issues which appellant objected to having submitted to the jury. Among the

objections to the issue was that there was insufficient evidence and pleadings to support any answer thereto, and that any answer would be conjectural, and that no account was taken in the issue, as framed, of any further damages, from some other source, from the time of the collision until the time it came into possession of the repairman.

■ The evidence was to the effect that following the collision, and after a tire had been changed which had been damaged, Mrs. Goldston drove the automobile to her garage, and that it there remained idle and unused for a period of about ten days. The repairman testified that it had to be towed from Mrs. Goldston's home to the repair shop, and that it could not be driven in its condition. The evidence would certainly warrant, if not compel, the inference that the automobile remained in the same condition from the time it was left in the garage by Mrs. Goldston, until it was picked up by the repairman. The only thing that happened to the automobile from the time of the collision until the time it was received at the repair shop, was that it was driven from the place of accident to Mrs. Goldston's garage, and towed from there to the repair shop. There was an inconsistency between the testimony of Mrs. Goldston that she in fact drove the automobile from the scene of the collision to her home, and in the repairman's testimony that it was in no condition to be driven. The repairman testified that his shop had regularly serviced the automobile before it was injured, and that he examined it at the repair shop, and that he could testify as to the value of the automobile before the accident, and he did so testify. He testified to the value in its damaged condition. The evidence was, in our opinion sufficient to support the jury's answer, fixing the value immediately after the collision. We overrule appellant's third point.

The judgment is affirmed.

## On Appellant's Motion for Rehearing.

Appellant's argument in support of its claim of right to ask its proposed questions of the jury panel, it seems to us, comes to this: That the letter in which appellee's counsel notified appellant that the insurance company had adjusted appellee's loss by transferring to him $311.63 by a "loan receipt" transaction is direct evidence; that the only inference which reasonable minds could draw therefrom is that said transaction was not a loan on account of loss, but a payment of the loss; that the pretended loan was a fraudulent subterfuge to conceal the fact of payment, and the insurance company was ipso facto subrogated to appellee's claim for damages against appellant.

As it was pointed out in our original opinion, it is in the public interest that the insurance losses be adjusted promptly, and that insurance companies realize on their subrogation claims from wrongdoers to the end that insurance rates may be kept lower. A contract which has the tendency to promote such public interest will not, from mere suspicion, be construed as a fraudulent subterfuge. However, whether the "loan receipt" transaction here involved was a loan or a payment may be determined only from the intention of the parties to the "loan receipt" as expressed by them therein. It was competent for the parties to the "loan receipt" to provide that the money thereby transferred was intended as a loan, which appellee should be obligated to repay only from any sum which he recovered from appellant on account of the collision. In that connection it would have been competent for the parties to agree that the insurance company should have an irrevocable power of attorney to collect said claim for damages from appellant for appellee and to deduct therefrom the money owed it by appellee. If the "loan receipt" had so provided, and in the state of the record it should be presumed that it did so provide if necessary to support the court's ruling, it would merely have constituted the relationship of debtor and creditor between appellee and the insurance company. In any case, appellant failed to make out a case that would have compelled the court to conclude that the insurance company was the real party at interest.

Appellant's motion for rehearing is refused.