**Brinson PARKER, Appellant,**

**v.**

**Michael KANGERGA et al., Appellees.**

**No. 622.**

Court of Civil Appeals of Texas, Tyler.

June 1, 1972.

Rehearing Denied June 29, 1972.

DUNAGAN, Chief Justice.

This suit was brought by Michael Kangerga and others, appellees on this appeal, against Brinson Parker, the appellant, and others who are not involved in this appeal, to recover damages for conversion of certain timber on lands belonging to appellees-plaintiffs by an unlawful entry upon their property and the cutting and removal of timber therefrom.

This case was submitted to a jury on eleven special issues which were answered and returned as their verdict to the court. Based on the jury verdict the court entered judgment for the plaintiffs-appellees. Brinson Parker alone appeals from the jury verdict and judgment rendered by the court.

The appellant has brought forward fourteen points of error.

He first contends that the court erred in its submission of Special Issue No. 1[1] because such issue as submitted amounts to a comment upon the evidence in the case.

Under this contention appellant argues that the issue, with its accompanying instructions, clearly informs the jury that the court believed and assumed that the appellant, Parker, was some sort of a trespasser with defendant-Nobles during the period of time in question and thus was prejudicial to said appellant and further that such issue constitutes a comment on the evidence in that such issue assumes that Brinson

Colley & Lloyd, Paul Colley, Henderson, for appellant.

Bath & Turner, T. A. Bath, Henderson, for appellees.

---

[1] "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that Brinson Parker was a joint trespasser (as defined and explained herein) with Alvin Nobles on the land in question after November 9, 1968?

"ANSWER: 'Yes' or 'No'.

"ANSWER: Yes.

"In answering the above issue, you are instructed as follows:

"A 'trespasser on land is one who, not having title thereto, and without consent of the true owner, makes entry thereon.'

"With reference to 'joint trespasser,' you are instructed that such a trespass is not dependent upon personal participation.

"To be a joint trespass there must be a command, advice, or encouragement to the actual trespasser, or concert and cooperation in the commission of the trespass, or subsequent ratification or adoption by one of an act of another for his benefit or in his interest."

Parker was, in fact, a trespasser of some sort when the court asked the jury if Parker was a "joint trespasser." No other issue was submitted to the jury inquiring as to whether Parker was a trespasser.

The appellees, plaintiffs in the court below, sought damages for the loss of timber unlawfully cut and removed from their lands. The appellant Parker, defendant in the court below, defended this action by a general denial—a claim that his name had been inserted in the timber deed by mistake, and that Alvin Nobles was the true owner of the timber, and he had merely loaned Nobles the money to buy the timber. Parker also alleged in his amended answer that he had never been on the lands and never cut or removed or hauled any timber therefrom; that he loaned Nobles, a co-defendant, $600.00 to purchase the timber from the grantors named in the timber deed; that Nobles prepared the timber deed, including Brinson Parker's name as grantee therein without his knowledge or consent; and that he believed in good faith the timber deed was from the real owners. As a matter of fact Brinson Parker's name is also shown on the face of the timber deed as the grantor. However, the deed bears four signatures who are shown to be the heirs of John Burney who were not the owners of the land the timber was cut and removed from. All of such pleadings of Parker were supported by his testimony upon the trial of this case. It was admitted and stipulated in the trial court that appellees, at all pertinent times, were the owners of the land and timber thereon in question.

Defendant Nobles by his amended answer admitted that during the period alleged, he went on this land, cut and removed the timber therefrom. This was done under the guise of the timber deed which named Parker and Nobles as the grantees as well as Parker as the grantor. It is under this timber deed that the appellant Parker and co-defendant Nobles claimed they were acting in good faith, believing that Nobles was the owner of the timber.

There is no evidence that appellant Brinson Parker ever made any actual physical entry upon appellees' lands or directed Nobles by any act or word to make an entry thereupon. Parker admitted that he bought pulpwood from Nobles which had been cut and removed from appellees' lands for which he paid Nobles but that he never had received any other timber or proceeds from the sale of any other timber from appellees' lands. Parker testified that he loaned Nobles the money to buy the timber located upon appellees' lands from the John Burney heirs. Parker also testified that he did not know that his name was in the deed at the time the same was procured by Nobles and that he did not give Nobles any authority to place his name in such deed. He further testified that he held the timber deed in question as security for the repayment of the loan made to Nobles to purchase the timber; that he had no agreement with Alvin Nobles to purchase the timber on the land involved. However, the jury found against Parker on the issues raised by these defenses.

The jury found that (a) Parker was a joint trespasser with Alvin ·Nobles on the land in question, (b) such trespass by Parker "was done willfully and with careless disregard for the rights of plaintiffs," and (c) Nobles did not include the name of Parker as a grantee without the consent and knowledge of Parker. Of the fact that defendant Nobles who actually went upon the land and cut and removed the timber was a trespasser, there can be no doubt his entry was intentional, was without the consent of the true owner, and was unlawful. 56 Tex.Jur.2d 11, sec. ·2. The fact that Nobles and Parker acted in good faith in reliance on the timber deed from the John Burney heirs does not alter the situation. 56 Tex.Jur.2d 16, sec. 8; 37 Tex.Jur.2d 456, sec. 3. Neither of them acquired any rights under the deed in either the land or timber, because the John

Burney heirs had no rights in either to convey. In removing the timber and applying it to their own uses after it had been severed from the land, said parties were also guilty of conversion. 14 Tex. Jur.2d 16, sec. 9; 37 Tex.Jur.2d 456, sec. 3; Fenley v. Ogletree, 277 S.W.2d 135 (Tex.Civ.App., Beaumont, 1955, writ ref., n. r. e.).

It having been admitted during the trial that Nobles was the actual trespasser, then. if Parker was also a trespasser, he would necessarily be a joint trespasser. Therefore, on that question the only issue before the jury was whether Parker was a joint trespasser, and as to this issue, it was not a comment on the evidence. Spears Dairy, Inc. v. Davis, 124 S.W.2d 159, 161 (Tex. Civ.App., Beaumont, 1939, n. w. h.). The issue submitted did assume and inform the jury that Nobles, a defendant, was a trespasser. This is a proper and correct assumption since it was established as a matter of law that Nobles was a trespasser. El Paso Drive-In Cafes, Inc. v. Wilson, 467 S.W.2d 200, 203 (Tex.Civ.App., El Paso, 1971, n. w. h.); Houston Transit Co. v. Goldston, 217 S.W.2d 435, 438 (Tex.Civ. App., Galveston, 1949, n. w. h.); Bradshaw v. McDonald, 147 Tex. 455, 216 S.W.2d 972, 977 (1949). Special Issue No. 1 is not subject to the criticism leveled against it by appellant.

Appellant next complains of the court's explanatory instruction given in connection with Special Issue No. 1, particularly the following portions thereof:

(1) "With reference to 'joint trespasser,' you are instructed that such a trespass is not dependent upon personal participation."

(2) " * * * or subsequent ratification or adoption by one of an act of another for his benefit or in his interest."

(3) "A 'trespasser on land is one who, not having title thereto, and without consent of the true owner, makes entry thereon.' "

because such instruction amounts to a comment on the weight of the evidence. Appellant further objects to such explanatory instruction "for the reason that Plaintiffs never alleged that Brinson Parker gave any advice, issued any command, or in any way encouraged or acted in concert or in cooperation with the Defendant Alvin Nobles in the trespass, nor that he adopted or ratified any action of the Defendant Alvin Nobles as making such trespass."

■■■■ It seems to be the law in this State that liability for trespass is not dependent upon personal participation and one who aids, assists, advises or gives encouragement to the actual trespasser, or concert and cooperation in the commission of a trespass, or subsequent ratification or adoption by one of an act of another for his benefit or in his interest is equally liable with him who does the act complained of. Fenley v. Ogletree, supra; State v. Lasiter, 352 S.W.2d 915 (Tex.Civ.App., Waco, 1961, writ dis.); Gregg v. Delhi-Taylor Oil Corp., 162 Tex. 26, 344 S.W.2d 411, 416 (1961); Glade v. Dietert, 156 Tex. 382, 295 S.W.2d 642 (1956); Kirby Lumber Corp. v. Karpel, 233 F.2d 373 (5th Cir., U. S. Courts of Appeal, originating from the U.S.District Court for the Eastern District of Texas); 56 Tex.Jur.2d 20, sec. 12; 87 C.J.S. Trespass § 13. For a party defendant to an action to be held liable, the evidence must show that he aided, assisted, advised, commanded or encouraged the commission of the trespass. Houston County Timber Co. v. Arnold Bros., 3 S.W.2d 827 (Tex.Civ.App., Galveston, 1928, writ dism., w. o. j.); 56 Tex. Jur.2d 20, sec. 11. Each of the trespassers may be held jointly liable for the whole amount of the damages. 56 Tex.Jur.2d, Trespass, p. 20, sec. 12; Thompson v. Albright, 4 Willson Civ.Cas.Ct.App. § 24, 14 S.W. 1020 (1889); Loftus v. Maxey, 73 Tex. 242, 11 S.W. 272 (1889); Diamond v. Smith, 27 Tex.Civ.App. 558, 66 S.W. 141 (1901, writ ref.).

The definition of "a trespasser on land" as defined by the trial court is identical

with the language found in 56 Tex.Jur.2d 11, sec. 2, defining such term citing a number of authorities in support thereof. In our opinion the issue here under attack, including the explanatory instructions given in connection therewith, finds support in the pleadings.

■ Appellant asserts that the trial court erred in the submission of Special Issue No. 7[2] for the reason that the language of said issue informs or tends to inform or advise the jury that the court believes that a fact issue has been raised by the evidence that Parker trespassed upon appellees' land by making physical entry thereon, willfully and with careless disregard for the rights of the appellees. This issue was based upon the pleading of appellees that sought exemplary damages.

In answer to Special Issue No. 6, the jury found that the timber in question had no cash market value in its manufactured state.

As pointed out by the appellees in their brief, since the jury did not give the timber a manufactured value which would be the measure of damages for wanton and willful misconduct, this issue was not required to support the judgment entered. A careful reading of the trial court's judgment reflects that the finding in response to Special Issue No. 7 was disregarded in the preparation and entry of the judgment, since no punitive damages were allowed. The only damages allowed were the stumpage value which would be allowed against

a good faith trespasser. 37 Tex.Jur.2d 456, sec. 3.

Appellant makes the contention that the finding of the jury in response to Special Issue No. 3[3], considered in light of the charge as a whole, amounts to a special finding by the jury that Parker converted timber belonging to the appellees in an amount of the value of $738.09 only, and that this specific finding controls all other findings of the jury and that the judgment entered against appellant Parker by the court below cannot stand. The judgment was for the plaintiffs-appellees and against the defendants, Southland Paper Mills, Inc., Brinson Parker, and Alvin Nobles, jointly and severally, in the sum of $738.-09, and against Parker and Nobles, jointly and severally, in the sum of $4,674.26.

Appellees, in answer thereto, say the appellant overlooks the fact that two types of damages were sought: (1) for conversion as a result of the trespass, and (2) as a good faith converter.

The undisputed proof in this case was that Alvin Nobles, also a defendant, had cut and removed timber from appellees' land of the value at the stump of $5,412.35.

■ Parker denied that he was a trespasser with Nobles and claimed that he was only responsible as a converter for the amount of $738.09 which he confessed to have taken through the purchase of the timber by Southland Paper Mills, Inc. This was the amount also converted by said paper mill. Under his admission that

2.　　"SPECIAL ISSUE NO. 7
"Do you find from a preponderance of the evidence that such trespass, if any, by Brinson Parker upon Plaintiffs' land in question was done willfully and with careless disregard for the rights of Plaintiffs?
"ANSWER: 'Yes' or 'No'.
"ANSWER: Yes.
"If you have answered Special Issue No. 6 'He was not', and Special Issue No. 7 'yes', or either of them in that manner, then answer the following Special Issue, but, if you have answered 'He

was', to Special Issue No. 6, and 'No' to Special Issue No. 7, you need not answer the following Special Issue."

3.　　"SPECIAL ISSUE NO. 3
"Find from a preponderance of the evidence the cash market value, if any, in Rusk County, Texas, of the timber taken from Plaintiffs' land in question converted by Brinson Parker after November 9, 1968.
"Answer in dollars, if any, and cents, if any, in figures.
"ANSWER: $738.09."

he had received $738.09 worth of timber from appellees' land, both Parker and the Southland Paper Mill were responsible for such amount as converters in good faith. The rule of law being that one who buys property must at his peril ascertain the ownership and if he buys from one who has no authority to sell, he is a converter. Nunn v. Padgitt Bros., 161 S.W. 921 (Tex.Civ.App., Dallas, 1913, n. w. h.); Fenley v. Ogletree, supra; 14 Tex.Jur.2d 24, sec. 21. As above stated, as a joint trespasser Brinson Parker is jointly liable with Alvin Nobles for all of the timber taken.

■ We find no merit in the contention that the judgment should not have been rendered against Parker for the maximum amount of the damages for which he was responsible under the findings of the jury in response to Special Issues Nos. 1, 2, and 3, wherein the jury found that (1) Brinson Parker was a joint trespasser with Alvin Nobles, (2) the cash market value of the timber taken from the land by Nobles, and those acting under him, was $5,412.35, and (3) the cash market value of the timber converted by Parker was $738.09.

Another contention of appellant is that there is no evidence of probative force to support the submission of Special Issues Nos. 1 and 7; that the jury's answers to said Special Issues Nos. 1, 9, and 10 are contrary to the overwhelming weight and preponderance of the evidence. In response to Special Issue No. 9, the jury found that Nobles did not borrow $600.00 from Parker with which to purchase the timber in question. In answer to Special Issue No. 10, the jury found that Alvin Nobles did not include the name of Brinson Parker as a party grantee in the timber deed without the consent and knowledge of the said Brinson Parker.

■ We look only to the favorable evidence in passing on the "no evidence" points, and the entire record in passing upon the other points of error.

■ There is evidence in the record that when Parker was first accused of cutting the timber on appellees' land, he produced a timber deed stating that he had purchased the timber, had a deed to it, and exhibited the deed to Thomas Watt, an employee of M. Kangerga & Brother. This was before a lawsuit was filed.

It is shown by the evidence that Parker is a pulpwood dealer and buys pulpwood from the producer; that a producer is one that harvests and produces the timber and hauls it to a paper mill. Parker had a contract with Southland Paper Mills, Inc. and was given a certain territory in which Southland would buy pulpwood only from him. Southland did not buy pulpwood from anyone but the few contractors they had. If Nobles wanted to sell pulpwood to Southland, he would have to go through Parker. Parker had six or eight people hauling pulpwood for him. Nobles is one of the people that hauled pulpwood for him. When Nobles and others hauled pulpwood for Parker, they took it all directly from the field to Southland.

When Mr. Watt and an attorney for the appellees first asked Parker about their transaction, he did not say anything at that time about loaning Nobles $600.00 to buy the timber.

Parker first saw the timber deed conveying the timber from the Burney heirs to him and Nobles on November 9, 1968, at his store in Beckville, Texas, when Nobles delivered it to him. At that time he gave Nobles four checks in the total sum of $950.00 which included the $600.00 consideration for the timber here in question and for timber on another tract that is not here involved. These checks were made payable to Nannie Malone, Fred Burney, Mattie Lou McAllister, and Lucy Taylor, grantors in the timber deed here involved. None of these checks showed that they were a loan by Parker to Nobles, as Parker contends.

The pulpwood Nobles hauled for Southland was only for the account of Parker

and the mill paid Parker for all of it. Mr. Watt testified that Parker told him that he and Nobles purchased the timber and exhibited the timber deed from the Burney heirs. The timber deed does reflect Parker and Nobles as the purchasers. However, upon the trial of the case Parker defended on the grounds hereinabove stated.

The admissions which Brinson Parker and Alvin Nobles made and their testimony subsequently given contrary to those earlier admissions were for the jury to consider. We will not lengthen this opinion by setting out other evidence which we think supports the jury's findings complained of.

After a careful review of the entire record and following the guidelines as above set out, we have come to the conclusion that there is evidence of probative force to support the jury's answers to the complained of issues and that said answers are not so contrary to the overwhelming weight and preponderance of the evidence to be manifestly wrong and unjust.

■■■ Finally, appellant contends that certain statements appellees' counsel made in his argument to the jury were improper, inflammatory, and incurable and that such statements constitute reversible error; and that if no one of the statements in itself is sufficient to constitute reversible error, the cumulative effect of the complained of argument is.

Appellant complains of the following argument to the jury made by counsel for appellees: "I don't believe that Alvin is going to get hurt much, but I will say this, that Brinson Parker shouldn't be permitted to hide behind him, to put him up as the straw man."

Counsel for appellant objected to such argument and requested the court to instruct the jury not to consider it for any purpose. Such objection and request was by the court overruled. Under the evidence in this case, we do not believe this argument was improper and the court did not err in overruling the objection and re-

quest. Texon Drilling Co. v. Elliff, 216 S.W.2d 824 (Tex.Civ.App., San Antonio, 1948, writ ref., n. r. e.); Wright Titus, Inc. v. Swafford, 133 S.W.2d 287 (Tex. Civ.App., Austin, 1939, dism., judg. cor.); 56 Tex.Jur.2d 568, sec. 230.

As to the other portions of the argument by appellees, objected to by appellant, the court promptly instructed the jury not to consider the testimony for any purpose. This was done at the request of appellant's counsel.

■■■ Except where they are inherently prejudicial, objectionable statements and arguments are generally deemed cured where they are promptly withdrawn or corrected by counsel. 56 Tex.Jur.2d 683, sec. 322. An instruction by the court to the jury to disregard improper remarks of counsel is ordinarily held to overcome any harm or prejudice caused by the argument, unless the remarks are so inflammatory that their prejudicial effect could not reasonably be removed by such admonition. 56 Tex.Jur.2d 687–689, sec. 326. If the argument was improper, we do not consider it as being beyond correction by means of a proper instruction which the court in this case gave.

■■■ Moreover, before a judgment is reversed because of argument of counsel, two things must appear: the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case. Royal v. Cameron, 382 S.W.2d 335 (Tex.Civ.App., Tyler, 1964, writ ref., n. r. e.); Texas Sand Company v. Shield, 381 S.W.2d 48 (Tex.Sup., 1964); Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953).

We do not think the argument was such as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure; Travelers Insurance

Company v. Walston, 436 S.W.2d 582 (Tex.Civ.App., Tyler, 1969, n. w. h.).

We have considered each of appellant's points of error and they are overruled.

Finding no reversible error the judgment is affirmed.